**STORY SERVICES, INC., d/b/a Story Dodge, Appellant,**

v.

**Nestor RAMIREZ, Jr., Nestor Ramirez, Sr., Individually and as Administrator of the Estate of Gloria D. Ramirez, Deceased, and Luz H. Lira, Appellees.**

No. 08–92–00320–CV.

Court of Appeals of Texas, El Paso.

Aug. 25, 1993.

Opinion Overruling Motion for Rehearing Sept. 29, 1993.

Rehearing Overruled Nov. 3, 1993.

---

R. Brent Cooper, Michael W. Huddleston, Cowles & Thompson, Dallas, for appellant.

Douglas Gelo, El Paso, for appellees.

Before OSBORN, C.J., and BARAJAS and LARSEN, JJ.

## OPINION

OSBORN, Chief Justice.

This appeal is from a judgment, based upon a jury verdict, awarding damages for personal injuries and a death resulting from a vehicle collision between a car driven by the Appellee, Nestor Ramirez, Jr., and a van owned by the Appellant. We reverse and render.

### Facts

On July 25, 1989, Nestor Ramirez, Jr. was driving a vehicle in which his mother was a passenger. Their car was struck by a Dodge van which was traveling the wrong way on a one-way street at a high rate of speed. Mr. Ramirez received serious injuries and his mother received injuries which resulted in her death six days later. The van had been reported to the police as stolen from the Story Dodge sales lot about 9:10 p.m. the night before the accident. It was being driven by a person identified as Steven Watson who was arrested on a charge of involuntary manslaughter. He was not indicted for either theft or unauthorized use of the van.

### Parties' Contentions on Taking Vehicle

There was a dispute as to when and how Watson obtained possession of the van. The Appellees argued the case before this Court on the theory that the van had been loaned out and left the sales lot with permission from Story Dodge. The Appellant contended throughout the trial and before this Court that the van had been stolen and that Watson

did not have permission or consent from Story Dodge to drive the vehicle at any time.

### Jury Verdict

By its verdict, the jury found (1) that Story Dodge negligently entrusted the van to Steven Watson, (2) that the negligence of Steven Watson proximately caused the occurrence in question, (3) that the acts or omissions of Story Dodge which resulted in the vehicle being driven from the premises were negligence, (4) that such negligence was a proximate cause of the occurrence in question, and (5) damages of Nestor Ramirez, Sr. resulting from the death of his wife, $60,000, (6) damages of Luz H. Lira resulting from the death of her mother, $25,000, (7) damages of Nestor Ramirez, Jr. resulting from the death of his mother, $17,000, (8) damages for Gloria Ramirez, $67,172.75 and, (9) damages of Nestor Ramirez, Jr. for his injuries, $97,000.

### Finding of Negligent Entrustment

In the first two points of error, the Appellant contends that there is no evidence and insufficient evidence to support the jury's answer to Question No. 1 (negligent entrustment). In *Williams v. Steves Industries, Inc.,* 699 S.W.2d 570 (Tex.1985), the Court said:

> The elements of negligent entrustment are: (1) entrustment of a vehicle by the owner; (2) to an unlicensed, incompetent, or reckless driver; (3) that the owner knew or should have known to be unlicensed, incompetent, or reckless; (4) that the driver was negligent on the occasion in question; and (5) that the driver's negligence proximately caused the accident.

699 S.W.2d at 571.

No question is raised about elements 4 and 5. Clearly, the driver was negligent and that negligence was a proximate cause of the accident. There are questions about the sufficiency of the evidence to establish the first three elements.

### Standard of Review

■ In determining a "no evidence" point of error, we consider only the evidence and inferences which tend to support the

verdict and disregard all evidence and inferences to the contrary. *Stafford v. Stafford,* 726 S.W.2d 14 (Tex.1987); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965). In determining an "insufficient evidence" point of error, we consider all the evidence, both that in support of and that contrary to the finding, to determine if the challenged finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

### Review of Evidence

■ If we determine that the verdict is against the great weight and preponderance of the evidence, we must detail the evidence and the reasons which force that conclusion. *Pool v. Ford Motor Co.* The Appellees relied primarily upon two witnesses to prove that the vehicle left the Story Dodge sales lot with permission of the owner. First, Lorenzo Martinez testified that he had been employed with the El Paso Police Department for over sixteen years with more than seven years as a detective in auto theft. He was assigned on July 26 to investigate the van which had been reported as stolen the night before. He took a written statement from the sales manager which indicated the van had been noticed as missing as the lot was being closed on the evening of the 24th. No one saw the van when it was driven away. On the 28th, he inspected the wrecked van and it had the keys in the ignition with the key code ring. He said usually the key code ring, from which other keys can be made, is kept under lock and key in the dealer's office. The van had a dealer's tag which is used for demonstration purposes when a vehicle is driven off the lot. He talked to Steven Watson at the hospital and he denied having stolen the vehicle or having driven it. Watson told the detective he was living in Juarez. He said Watson had been arrested many times for auto theft and other types of thefts and fraud. When asked if the vehicle with the set of keys and key code ring and paper tag attached was initially driven with permission, he answered, "It's possible." He said the Department of Public Safety had no record of a driver's license for Steven Watson,

but acknowledged that no check was made for a license from Juarez, where Watson said he lived, or from New Mexico or California, where he had been arrested. On cross-examination, he said he did not know if Watson was licensed or unlicensed at the time. He also testified that his investigation never uncovered any evidence that this vehicle was anything but stolen, and that no evidence was ever uncovered that consent was given for anyone to drive this vehicle from Story Dodge.

The other principal witness was Alfredo Bonilla, a private investigator, who had worked for the Police Department for twenty-four years. He saw the van in the wrecker yard on July 31. Over objection, he testified that in his opinion, permission was given to take the vehicle from the car lot. This was based upon (1) the time the vehicle was reported stolen, (late in the evening which appeared that somebody was waiting for the vehicle to be returned), (2) the vehicle had demonstrator plates (which are used when a person has permission to drive a vehicle from the lot), and (3) the vehicle had keys and the coded key ring (which would normally have to be provided by sales personnel to a customer). He concluded that the vehicle had been loaned to Steven Watson.

The Appellees also put on evidence, by deposition or live testimony from seven witnesses who had worked for Story Dodge in July 1989. Gerald Hayes, the general manager, said the sales manager, Silver Zubia, learned the van was gone when he locked up for the evening. He said no one "turned it loose that day". He said the company had seven vehicles stolen in three years, three of which were taken while being driven by a sales person. Angelo Parker, a salesman, had no knowledge who took the van, but thought it had been missing on Saturday rather than Monday when it was reported to the police. Jeff Fargason, a salesman, saw the van on the lot on the 24th, but had no personal knowledge of how it came to be missing. Steve Brown, worked an early shift and was not on the lot at closing time. He knew the battery was dead in the afternoon and someone was looking for jumper cables. Argelia Jaurequi noticed the van missing between seven and eight o'clock on the evening of the 24th. She had shown the van to a customer on that date and the battery was dead. She got the keys and, using jumper cables to the next van, started the van and left it running to charge the battery. Her testimony was:

Q. What time would you guess that you showed the customer the car?

A. Right about between 7:00 and 8:00.

Q. And what did you do? You left the keys in the car, and then the car was driven off? Is that what happened?

A. Right.

She estimated that she left the van running from thirty to forty-five minutes before she noticed it was missing. The call to the police was about thirty minutes later.

William Boggs, Jr. worked the morning shift on the 24th and he remembered seeing the van that morning. He had no personal knowledge how the van was taken. He said most cars on the lot had paper tags on them.

Silverio Zubia, Jr. was the sales manager and he called the police to report the van stolen on July 24. He said all the vehicles had paper tags in order to demonstrate the vehicles. He saw the vehicle on Monday and said that nobody had loaned it out to a customer. He had no knowledge how the van was taken from the lot. He testified they would never loan a vehicle to a customer that was unlicensed.

There was also evidence that many cars are stolen in El Paso and most are immediately driven to Juarez. About 5,000 were stolen in 1989 and 5 percent of those were from dealerships. Very few of those are involved in an accident. Officer Conner could only recall two stolen vehicles being in accidents in the past year and a half.

### Analysis

We conclude that the jury finding of negligent entrustment is in part against the great weight and preponderance of the evidence and clearly wrong and in part has no evidence to support the finding.

■ Officer Martinez said it was possible the vehicle was driven with permission.

That evidence alone would not establish the first element, i.e., entrustment by the owner. Alfredo Bonilla was of the opinion the car was driven with permission of the owner and had been loaned to Watson. That evidence raised a fact issue as to entrustment by the owner. But, the Appellees' other witnesses all contradicted Bonilla's opinion. Gerald Hayes said the vehicle was not turned loose that day. Argelia Jaurequi said the van was taken while the battery was being charged. Silverio Zubia said the van had not been loaned out to a customer. The person driving the van at the time of the accident had a long record of stealing vehicles. It is testimony from Appellees' own witnesses which make the finding against the great weight and preponderance of the evidence. See *Crawford & Co. v. Garcia*, 817 S.W.2d 98 (Tex.App.—El Paso 1991, writ denied).

■ Even if permission had been granted to Watson to drive the van, there is no evidence that he was unlicensed and that Story Dodge knew that he was unlicensed. Officer Martinez testified:

Q. You don't know whether Mr. Watson was licensed or unlicensed?

A. At the time, no, I don't.

Q. Well, you don't know that today for a fact, do you?

A. No.

Q. And you certainly never told anyone at Story Dodge that he was licensed or unlicensed?

A. No, sir, I didn't.

David Conner, a sergeant with the El Paso Police Department auto theft section, who assisted in the booking of Watson and some investigation testified:

Q. You don't have any information in your investigation of this case as to whether or not whoever took that car off the lot on July 24th had a license or didn't have a license?

A. No, sir.

Silverio Zubia testified as a witness for the Appellees that he would never loan a vehicle to a customer that was unlicensed. The evi-

dence reflected that Watson was a resident of Juarez, Mexico but no attempt was made to determine if he had a driver's license in Mexico. He had an arrest record in New Mexico, but no attempt was made to see if he had a license from that state. The burden of proof was upon the Appellees on this issue and the only proof was that Watson did not have a Texas license. In a city which borders on Mexico and is located less than ten miles from New Mexico, many drivers are on the streets every day with no Texas license. But we do not assume that they are unlicensed drivers. There is no contention that Story Dodge knew or should have known at the time the vehicle was allegedly entrusted to Watson that he was unlicensed, incompetent, or reckless and no evidence was offered to establish that fact. There was no proof to establish the third element of the cause of action.[1] Points of Error Nos. One and Two are sustained.

*Finding of Negligence*

■ In the next two points of error, the Appellant contends that there is no evidence and insufficient evidence to support the jury's answer to Question No. 3 (negligence). The evidence established that prior to the van being missing from the sales lot, the keys had been placed in the switch, the motor started, and the vehicle left running for at least half an hour. The clear inference from the evidence is that the vehicle was left unattended since no one saw who drove the vehicle from the lot and no one knew just when the vehicle disappeared. Although there was testimony that there was a rail between where the van was parked and the street, the van could be backed up and driven out one of two exits from the sales lot. In her testimony, Argelia Jaurequi acknowledged that she should have stayed by the van while it was running, but she said she never thought anybody was going to come by and decide to take it. The evidence is both legally and factually sufficient to support the answer to Question No. 3 as to negligence. Points of Error Nos. Three and Four are overruled.

---

1. Although the dissent concludes that there was proof Watson was unlicensed, that opinion does not suggest Story Dodge knew or should have known that fact prior to the accident.

### Finding of Proximate Cause

■ The Appellant next contends that there is no evidence and insufficient evidence to support the jury's answer to Question No. 4 finding the negligence was a proximate cause. The two elements of proximate cause are cause in fact and foreseeability. *Farley v. M M Cattle Co.,* 529 S.W.2d 751 (Tex. 1975); *Hopson v. Gulf Oil Corp.,* 150 Tex. 1, 237 S.W.2d 352 (1951). Justice Smedley in the *Hopson* opinion quotes from Prosser, who wrote that if liability is limited to foreseeable consequences, "the consequences must be a normal, substantial part of the risk, which a reasonable man would recognize as fairly to be taken into account by the defendant at the time of his act." *Id.* at 356. That opinion also notes that it is not necessary to reasonably anticipate the exact nature of the plaintiff's injury or the precise manner of its infliction.

### Legal Insufficiency

We will initially pass on the legal insufficiency issue and then pass on the factual insufficiency issue. *Glover v. Texas General Indemnity Company,* 619 S.W.2d 400 (Tex. 1981).

■ In *Parker and Parker Constr. Co. v. Morris,* 346 S.W.2d 922 (Tex.Civ.App.—El Paso 1961, writ ref'd n.r.e.), this Court held that the operation of a vehicle by one without authority to do so is an unforeseeable intervening cause of a third party's injuries, preventing liability on the part of the vehicle's owner. That holding was the basis for the decision in *Williamson v. Wayne Strand Pontiac–GMC, Inc.,* 658 S.W.2d 263 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.). In that case, the appellee left the key in the ignition of a car parked on its lot. The car was stolen and the appellant sustained personal injuries when he hit that vehicle. The Court affirmed a judgment *non obstante veredicto* on the basis that leaving the key in the ignition of a vehicle which was stolen was not a proximate cause of the plaintiff's injuries. More recently, in *Wolf v. Friedman Steel Sales, Inc.,* 717 S.W.2d 669 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.), the Court noted that courts have held generally that theft and subsequent negligent operations

are not the reasonably foreseeable risk of leaving a car unattended with the key in the ignition. See also *McKinney v. Chambers,* 347 S.W.2d 30 (Tex.Civ.App.—Texarkana 1961, no writ) and *Lollis v. Humble Oil & Refining Company,* 285 S.W.2d 249 (Tex.Civ. App.—El Paso 1955, writ ref'd n.r.e.).

Just last year in *Simmons v. Flores,* 838 S.W.2d 287 (Tex.App.—Texarkana 1992, writ denied), Chief Justice Cornelius, writing for a majority of the Texarkana Court, affirmed a summary judgment denying recovery in a case where the defendant parked her car and left the ignition keys inside the vehicle. The car was taken without her knowledge or consent from a private parking lot. The Court followed the rule that "Generally, a person who leaves the keys in a car will not be liable for damage caused by one who steals the car." *Id.* at 288. In that case, Justice Bleil wrote a dissenting opinion. He concluded that a person of ordinary care would have foreseen that someone might start the car and cause damage or injury to another person. Even with the dissent in a summary judgment case, the writ was denied.

The Court in *Garvey v. Vawter,* 805 S.W.2d 601 (Tex.App.—Beaumont 1991, no writ) remanded for a trial a case with similar facts, but that is a summary judgment case with a burden of proof on the defendant unlike one where the case has been tried to a fact finder with the burden on the plaintiff. And as shown by the Court's first opinion, no supporting affidavits were filed to meet the burden of proof. *Garvey v. Vawter,* 774 S.W.2d 86 (Tex.App.—Beaumont 1989), *rev'd,* 786 S.W.2d 263 (Tex.1990). In another summary judgment case, *Finnigan v. Blanco County,* 670 S.W.2d 313 (Tex.App.—Austin 1984, no writ), the stolen vehicle was parked with the motor running four or five feet away from the fence of the jail yard and stolen by an escaped prisoner. Both the facts and the burden of proof in the summary judgment proceeding make that case distinguishable from this case.

The four cases where the Supreme Court chose not to grant a writ, all announced the same rule. As noted in the *Wolf* opinion, a prior cause cannot be made the basis for an

action for damages if it does nothing more than furnish the condition or give rise to the occasion which makes the injury possible, if such injury is the result of some other cause which reasonable minds would not have anticipated, even though the injury would not have occurred but for such condition. The Texarkana case in 1992 indicates that what this Court said in the *Morris* case in 1961 is still the law, it applies to vehicles with the keys in the vehicle and the issue should be decided as a matter of law. To hold otherwise means that one whose negligence results in their car being stolen anywhere in El Paso, where many cars are stolen, is an insurer for the damages of a person injured by a thief who is a reckless or incompetent driver. Point of Error No. Five is sustained.

## *Factual Insufficiency*

█ We also conclude that the finding on the issue of foreseeability is against the great weight and preponderance of the evidence and clearly wrong and unjust. Alfredo Bonilla testified as follows:

Q. [A]ssume for a moment that it was left running, and someone came walking down the street, jumped into it, a thief. And is it foreseeable that that thief might wreck the vehicle in attempting to get it to Mexico, or elude police officers, or whatever?

A. Yes, sir, very conceivable.

The problem with that hypothetical question is that there was never any proof of the facts assumed, i.e., that the vehicle was being driven to Mexico or to elude police officers. Bonilla also testified on cross-examination that the accident was not foreseeable if the vehicle was stolen, but was foreseeable if the vehicle was loaned. The Appellees also called as their witness Sergeant David Conner, a police officer in the auto theft section, who testified on this issue as follows:

Q. And you don't believe that Story Dodge could foresee that 17 hours after this car was taken off the lot, that this individual, in a drunken stupor, would have been going the wrong way on a one-way street, do you?

A. I don't see any way that they could have foreseen that.

Officer Conner's opinion is certainly consistent with his testimony that he knew of only two accidents out of what would be more than 6,500 cars stolen in the last year and a half. Can anyone foresee an event which occurs 0.003 percent of the time?

In addition, the Appellant presented the testimony of Robert Shane, a law professor, who testified that the accident was not a foreseeable consequence of the actions of Story Dodge. He said, "the accident of which complaint was made was not reasonably foreseeable by Story Dodge." Also, Joe Garcia, an investigator who worked for the El Paso Police Department for twelve years, testified that Story Dodge could not have reasonably foreseen that this accident would occur after the theft the day before.

Three witnesses, including one called by the Appellees, testified the accident was not foreseeable. Another witness testified it was foreseeable under certain conditions and those conditions were never established. The jury answer was not based upon a preponderance of the evidence.[2] Point of Error No. Six is sustained.

## *Opinion Evidence*

The last point of error asserts the trial court erred in permitting Alfredo Bonilla to testify regarding the ultimate issues of permissive use, negligence, and foreseeability. TEX.R.CIV.EVID. 704 provides:

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

With regard to testimony by experts, TEX. R.CIV.EVID. 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,

---

2. The dissenting opinion chooses not to consider all the evidence in passing on the factual sufficiency issue and fails to apply the proper standard of review.

training, or education, may testify thereto in the form of an opinion or otherwise.

 It is contended that Mr. Bonilla did not possess any skill or other qualification to justify his opinion in this case. Expert testimony should be admitted only when it will aid the jury in making inferences regarding the fact issues more effectively. *Thompson v. Mayes,* 707 S.W.2d 951 (Tex. App.—Eastland 1986, writ ref'd n.r.e.). When the jury is equally competent to form an opinion regarding ultimate fact issues, the expert's testimony as to those issues may be excluded. *Lopez v. City Towing Assoc. Inc.,* 754 S.W.2d 254 (Tex.App.—San Antonio 1988, writ denied). It is error to admit opinion evidence on an issue where no specialized or technical knowledge is necessary. *Borden Inc. v. De La Rosa,* 825 S.W.2d 710 (Tex. App.—Corpus Christi 1991), *vacated,* 831 S.W.2d 304 (Tex.1992).

 In this case, we need not reach the issue of whether the opinion of an expert was needed and whether Bonilla had the necessary qualification. Errors in admitting evidence will not require reversal unless that evidence controlled the judgment. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226 (Tex.1990). Giving the Appellees the benefit of Bonilla's opinion, the evidence will not support a judgment for the Appellees. No harm is shown. Point of Error No. Seven is overruled.

The judgment of the trial court is reversed and judgment rendered for the Appellant.

LARSEN, Justice, dissenting.

I respectfully dissent. I believe the majority has erred by holding that, as a matter of law, the criminal acts of a car thief extinguish the liability of a negligent car owner. The sole issue upon which this case rests, in my view, is that of foreseeability. If the jury could reasonably conclude the van's theft, and later the collision, were foreseeable, their verdict should stand. I believe there was sufficient evidence on those issues to sustain the jury's verdict, and I would therefore affirm the trial court's judgment. I also

believe the general negligence verdict is sufficient to uphold the outcome here, so my analysis will be directed first at that theory of liability and not the plaintiffs' theory of negligent entrustment.[1]

## LEGAL BACKGROUND

### 1. Foreseeability creates duty.

All persons are charged with a general duty to exercise ordinary care to avoid foreseeable injury to others. Foreseeability is the foremost and dominant consideration in determining the existence of duty. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex. 1987). Ordinary care is that degree of care that a person of ordinary prudence would use under the same or similar circumstances. Foreseeability does not require the tortfeasor to anticipate the particular nature of the injury which occurs, but only the general character of that injury. *Nixon v. Mr. Property Management Co. Inc.,* 690 S.W.2d 546, 551 (Tex.1985). Although generally criminal conduct of another extinguishes the liability of a negligent actor, the initial negligence is not superseded when the criminal conduct is a foreseeable result of that negligence. *Nixon,* 690 S.W.2d at 549–50; *El Chico Corp.,* 732 S.W.2d at 311; *Gutierrez v. Scripps–Howard,* 823 S.W.2d 696, 698 (Tex.App.—El Paso 1992, writ denied). The RESTATEMENT (SECOND) OF TORTS reflects this approach. It states:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, *unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.* *Nixon,* 690 S.W.2d at 550, quoting RESTATEMENT (SECOND) OF TORTS § 448 (1965). [Emphasis in *Nixon* ].

---

1. Story Dodge basically conceded its negligence in leaving the van running for thirty to forty-five minutes at an unattended corner of its lot.

Foreseeability that conduct involves an unreasonable risk of harm to another, then, creates a duty to avoid that conduct, even where the risk stems only from intentional misconduct of another. The fundamental question is one of fairness: Is it fair, under the facts of a particular case, to hold a negligent party responsible for the criminal act of another? Is it fair, under the facts of a particular case, to hold a car owner responsible for damages caused by a criminal using the stolen car? As one court has observed in passing upon this issue:

> Whether a duty exists is ultimately a question of fairness [citation omitted]. As we view the matter, there is nothing unfair in requiring defendants to go to trial on the question of whether they should have foreseen that the leaving of [defendant's] automobile unattended under the circumstances recited above unreasonably increased the hazard of its theft and subsequent mishandling—particularly where that hazard could have so easily been substantially reduced, if not entirely eliminated.... *Hill v. Yaskin,* 75 N.J. 139, 380 A.2d 1107, 1111 (1977).

I believe that the imposition of such a duty is recognized by existing Texas law and presents an evenhanded approach to a difficult problem. I would hold that a duty to avoid foreseeable car thefts exists, as a part of the general duty to avoid foreseeable criminal acts of others. I do not see that our Supreme Court has created or sanctioned an exception to this general rule applicable only to car thefts.

### 2. Foreseeability creates proximate cause.

The second issue we must determine in assessing tort liability here is proximate cause. The two elements of proximate cause are cause in fact and, again, foreseeability. *Nixon,* 690 S.W.2d at 549. Cause in fact is established when defendant's negligent act is a substantial factor in bringing about plaintiffs' injury, and without which no harm would have been incurred. *Id.* Cause in fact is not an issue here. Foreseeability in this context means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that the negligent act created for others. *Id.* We should not excuse a tortfeasor's negligence where criminal conduct is a foreseeable result of such negligence. *Id.*

Once plaintiffs present some evidence from which a reasonable fact finder might determine that criminal conduct was the foreseeable result of a negligent act, they establish two things: (1) the existence of a legal duty to avoid negligent conduct enabling the criminal act, sufficient to present the case to a jury; and (2) a fact question as to whether the defendant's enabling negligence proximately caused plaintiffs' damages. This is the law in Texas, and this general rule is applicable to the facts we review here. *Nixon,* 690 S.W.2d at 550; *Castillo v. Sears Roebuck & Co.,* 663 S.W.2d 60 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.); *Walkoviak v. Hilton Hotels Corp.,* 580 S.W.2d 623 (Tex.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.).

Several Texas courts, moreover, have recognized specifically that a vehicle owner's negligence in leaving a car unattended with keys in the ignition *may* proximately cause a third party's injuries after the car is stolen. In *Simmons v. Flores,* 838 S.W.2d 287, 288–89 (Tex.App.—Texarkana 1992, writ denied),[2] the Court characterized the law as follows:

> [T]he act of an owner in leaving a car unlocked with the keys in it at a public place *may* be negligence and a proximate cause of damage to a third person or property when a thief takes the car and causes such damage. But, to constitute negligence and proximate cause in those circumstances, proof of the owner's conduct must be accompanied by *evidence* that, because of the facts and circumstances surrounding the location and the conduct, a reasonable, prudent person would not have

---

2. The majority ignores the fact-specific nature of *Simmons'* holding. There, the defendant filed a motion for summary judgment to which plaintiff filed no response. There was no evidence that special circumstances existed which would create liability. Particularly in light of its unambiguous statement of the general rule, I do not believe *Simmons* stands for the proposition for which the majority relies upon it.

acted as the owner did and could have reasonably foreseen that the car might be stolen and that some damage might result. *Simmons*, 838 S.W.2d at 288–89.

The *Simmons* Court addressed the situation where a tortfeasor merely left ignition keys in a parked car; the only Texas case, before this one, which involved a car left *running* found that act to be negligent, and resulting damage to be foreseeable. *Finnigan v. Blanco County*, 670 S.W.2d 313 (Tex.App.— Austin 1984, no writ) (deputy sheriff left car running in front of jail, escapee stole car and was involved in fatal collision). I believe in this case the issue was properly left to jury determination, as reasonableness and foreseeability are inherently issues dependent upon the facts and circumstances of each case; we should not as a matter of law preclude plaintiffs from recovery for the negligent failure to secure a vehicle against theft. What may constitute a negligent act in one circumstance may be perfectly reasonable in another. *Id.* at 317; *Simmons*, 838 S.W.2d at 288–89; *Hunsucker v. Omega Industries*, 659 S.W.2d 692, 699 (Tex.App.— Dallas 1983, no writ); *Bicknell v. Lloyd*, 635 S.W.2d 150, 152 (Tex.App.—Houston [1st Dist.] 1982, no writ).

### *"SPECIAL CIRCUMSTANCES" APPROACH*

A number of courts, in devising general rules for imposing a duty in circumstances like those presented here, adopt a "special circumstances" formulation where the acts of a car thief result in injuries to a third party. That is, they require that plaintiff satisfy a threshold inquiry showing some increased hazard of vehicle theft beyond just the frequency of crime in our modern world. Some courts require, too, a showing of increased likelihood that the vehicle will be mishandled once stolen. After plaintiff meets this initial "special circumstance" requirement, it then becomes the jury's task to determine whether defendant should have foreseen the risks which led to plaintiff's damage. The Minnesota Supreme Court thoughtfully constructed the rule as follows:

> Special circumstances which impose a greater potentiality of foreseeable risk or more serious injury, or require a lesser burden of preventative action, may be deemed to impose an unreasonable risk on, and a legal duty to, third persons.

. . . . .

Each case must be considered on its own facts to determine whether the joint effect of them *in toto* justifies the conclusion that the foreseeable risk of harm imposed is unreasonable, and that the defendant owner or one in charge of a vehicle has a duty to third persons in the class of the plaintiffs to refrain from subjecting them to such risk.

. . . . .

If the defendant is aware or should be aware of circumstances that increase the probability that the car will be stolen, that the thief is likely to operate the car negligently, and that consequently injury or damage to a third party will result, the defendant is under a duty to act so as to prevent the theft and such injury or damage.

. . . . .

Once we acknowledge *conceptually* the existence of a duty predicated on foreseeability of an increased hazard of theft and subsequent mishandling of an automobile, it should then become the jury's task to determine whether under the facts of this case that duty was violated by defendant. . . . *Illinois Farmers Insurance Co. v. Tapemark Co.*, 273 N.W.2d 630, 634–36, 638 (Minn.1978).

*See also Itami v. Burch*, 59 Or.App. 400, 650 P.2d 1092 (1982); *Enders v. Apcoa, Inc.*, 55 Cal.App.3d 897, 127 Cal.Rptr. 751, 756 (1976); *Ruyle v. Reynolds*, 43 Ill.App.3d 905, 2 Ill. Dec. 584, 357 N.E.2d 804 (Ill.4th Dist.1976); *Zinck v. Whelan*, 120 N.J.Super. 432, 294 A.2d 727 (1972). In formulating this "special circumstance" rule, courts balance competing interests. On the one hand is the dubious social utility of conduct which enables car theft (leaving unattended cars with keys inside, or even with engines running), the minimal effort owners need exert to remove ignition keys and lock cars, and the opportunistic nature of most car thefts. On the other hand is the prevalence of car theft in our society

and the greatly increased likelihood that drivers of stolen cars will cause accidents. This seems to me a sound approach to the problem: it structures the foreseeability requirement so courts may apply the law consistently; it allows defendants the opportunity to show they could not anticipate the enhanced danger of theft or mishap; and it gives plaintiffs access to a jury if they present a *prima facie* case of foreseeability.

Based upon this legal precedent, therefore, I believe Texas does not subscribe to an unqualified rule that the owner of a vehicle is never liable to third parties injured as a result of negligent operation of that vehicle by a thief. Rather, I think this case is governed by the law pronounced in *Nixon.* The foreseeability of criminal conduct enabled by defendant's negligent acts creates a duty to exercise reasonable care to prevent that criminal conduct.

## THE MAJORITY OPINION DOES NOT REFLECT CURRENT LAW

The majority opinion bases its conclusion that Story owed plaintiffs no duty upon this Court's 1961 decision, holding that the owner of a motor vehicle is not liable, as a matter of law, to third parties for damages caused by the negligent operation of the vehicle by a thief. *Parker and Parker Constr. Co. v. Morris,* 346 S.W.2d 922, 925 (Tex.Civ.App.—El Paso 1961, writ ref'd n.r.e.). I disagree with the majority's reliance on that case for two reasons: First, I believe its sweeping holding that a vehicle owner is never liable, as a matter of law, for the negligent driving of a thief is incorrect; and second, I believe the circumstances here were so different from those in *Parker* that it is of little precedential value.

**3.** That statute provides:
No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, removing the key from the ignition and effectively setting the brake thereon and, when standing upon any grade, turning the front wheels to the curb or side of the highway. Tex.Rev.Civ.Stat.Ann. art. 6701d, § 97 (Vernon 1977).
While this law applies only to cars on public highways, it demonstrates the legislature's con-

*Parker* involved the theft of a tractor which was driven into plaintiff's house, causing damage. The driver-thief was never apprehended. The tractor had no ignition key or lock. The owner would have had to modify the tractor's "push-pull" ignition design, standard on tractors at that time, to render the unattended tractor inoperable. Under those facts, at that time, the Court held that any negligence of the tractor owner in failing to modify the tractor's ignition did not proximately cause plaintiff's damage, as the theft was an independent intervening cause. Under those particular facts, *Parker* was probably correctly decided, but the facts of this case are very different, and the law has evolved significantly in the thirty-two years since *Parker* was written. I do not believe it should control here.

Likewise, the majority relies upon *Williamson v. Wayne Strand Pontiac–GMC, Inc.,* 658 S.W.2d 263 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.), a 1983 case where a car owner entrusted his vehicle for repairs at defendant dealership. The owner left his keys in the car when he dropped it at the lot, and it was stolen by two thieves. The thieves abandoned the car in a Corpus Christi street, darting across the intersection just as plaintiff had the bad luck to approach. Plaintiff was injured as he evaded the running thieves and abandoned car. *Williamson* relies upon *Parker,* holding that the dealership's failure to remove the ignition keys could not make it liable for plaintiff's injuries. It noted that Texas statute makes it illegal to leave a car unattended with keys in the ignition, but found that this statute did not apply to vehicles on private property.[3] Simply put, the majority opinion holds that a car thief's intervening criminal acts, as a matter of law, preclude a negligent car owner's liability for injuries sustained after the theft. This is not the law in Texas.[4]

cern with the dangers of leaving operable, unattended vehicles in accessible places.

**4.** At least nine jurisdictions, besides Texas, have recognized that a car owner may owe others a duty to remove keys from a car's ignition, and negligent failure to do so may result in the owner's liability. *See Hallmark Insurance Co. v. Chicago Transit Authority,* 179 Ill.App.3d 260, 128 Ill.Dec. 319, 534 N.E.2d 501 (1989); *Illinois Farmers Insurance Co. v. Tapemark Co.,* 273 N.W.2d 630 (Minn.1978); *Vining v. Avis Rent–A–*

## FACTS

Using the legal analysis I have outlined, then, the foreseeability questions of this case are two: (1) was it reasonably foreseeable that the van would be stolen; and (2) was it reasonably foreseeable that after a theft, the car would be involved in an accident. Evidence supports the jury's implied findings of foreseeability as to both prongs of this test.[5]

### 1. Foreseeability of the theft.

First, as to whether it was foreseeable that this van would be stolen, on these facts it would be miraculous had it *escaped* theft. This was no ordinary situation; indeed, it is a textbook example of just the "special circumstances" where courts are willing to impose liability. Story Dodge did not just leave an unattended vehicle with dealer plates at a spot close to the street; it did not just leave that unattended vehicle unlocked; it did not just leave the vehicle unlocked with keys in the ignition. Story Dodge left an expensive conversion van at "the point," the most visible spot on its lot, next to the street, and far from its office. It left the vehicle unattended at night, equipped with dealer tags, unlocked, doors and windows wide open to invite attention, keys in the ignition, and the motor running. The van might as well have had "STEAL ME" written across the windshield.

El Paso County has an extraordinarily high rate of car theft; employees of Story Dodge are aware of that rate and know they must exercise caution with their cars because of it. In the five years before this accident occurred, about 30,000 cars were stolen in El Paso. In 1988, the year before this theft, around 250 cars were stolen from El Paso dealerships.[6] Seven cars had been stolen from Story Dodge in three years; three were stolen off the lot during working hours. Theft was "not unusual" at this car dealership. Story Dodge had only one other 1988 conversion van on its lot during the summer of 1989 and that van, too, was stolen.

Based on these facts, the jury was entitled to find that theft of an expensive conversion van, parked near the street, unattended at night, wide-open with keys in the ignition and engine running, in a city where car theft is rampant, was not just foreseeable, it was almost inevitable. I would find plaintiffs fully satisfied this aspect of the foreseeability test.

### 2. Foreseeability of the accident.

The second aspect of foreseeability here is whether Story Dodge could reasonably anticipate the van would be involved in an accident after it was stolen. Admittedly, plaintiffs did not present a surfeit of evidence on this point. Foreseeability that the driver of a stolen car would drive it negligently and collide with another automobile is, nevertheless, a question of fact to be decided by the trier of fact.[7] Two witnesses, however, one

*Car Systems, Inc.,* 354 So.2d 54 (Fla.1977); *Hill v. Yaskin,* 75 N.J. 139, 380 A.2d 1107 (1977); *Enders v. Apcoa, Inc.,* 55 Cal.App.3d 897, 127 Cal.Rptr. 751 (2d Dist.1976); *Ruyle v. Reynolds,* 43 Ill. App.3d 905, 2 Ill.Dec. 584, 357 N.E.2d 804 (Ill. 4th Dist.1976); *State Farm Mutual Automobile Insurance Co. v. Grain Belt Breweries, Inc.,* 309 Minn. 376, 245 N.W.2d 186, 188 (1976); *Zinck v. Whelan,* 120 N.J.Super. 432, 294 A.2d 727 (1972); *Davis v. Thornton,* 384 Mich. 138, 180 N.W.2d 11 (1970); *Khoyan v. Turner,* 255 Md. 144, 257 A.2d 219 (1969); *Gaither v. Myers,* 404 F.2d 216 (D.C.Cir. 1968); *Mellish v. Cooney,* 23 Conn.Supp. 350, 183 A.2d 753 (Cir.Ct.1962); *Justus v. Wood,* 209 Tenn. 55, 348 S.W.2d 332 (1961); *Ross v. Hartman,* 139 F.2d 14 (D.C.Cir.1943).

5. This two-pronged approach to foreseeability is not generally acknowledged by case law: the courts have focussed only upon the foreseeability of a particular *theft,* and tend to skim over the foreseeability of an accident following the theft.

This may be, as I will discuss later, because there is a common assumption of harm following a vehicle theft.

6. That defendant here is a car dealership, handling hundreds of vehicles every year, is also worth noting. Professional automobile vendors should know that car theft is dangerously frequent in El Paso and should take measures to guard against it. *See Enders v. Apcoa, Inc.,* 127 Cal.Rptr. at 756 ("A parking lot operator is no less knowledgeable of these risks and dangers than a private citizen, and perhaps should be held to a greater degree of responsibility because of the volume of cars left in his care."). A dealership's eagerness to entice customers should not excuse the sort of carelessness which led to the theft here.

7. In a highly unusual tactic, Story Dodge called a law professor to give his opinion on proximate causation and foreseeability. The jury chose to

of them the sales manager at Story Dodge, testified it was reasonably foreseeable a thief might have an accident in this stolen car. The evidence on this matter was disputed, but I would hold it adequate to support the jury's verdict. Moreover, the testimony on this issue only reinforces common sense: an individual driving a stolen car is not a law-abiding citizen, nor likely to be a cautious driver, and is probably nervous and distractable.[8] I would therefore uphold the jury's finding that it was reasonably foreseeable the stolen van would be involved in a collision such as occurred here.

## SUFFICIENCY OF EVIDENCE THAT DRIVER WAS UNLICENSED

Finally, I disagree with the majority's conclusions on plaintiffs' negligent entrustment theory. As to plaintiffs' proof that Watson was unlicensed, I would hold that sufficient evidence supports that claim. Evidence was that Watson, when arrested, gave police a Texas driver's license number that proved to belong to another person. Watson did not have a Texas driver's license. Although plaintiffs' search for Watson's license went no further, I would hold that from the combination of facts that Watson lied about his license, and that he had none in the State he claimed, sufficient evidence satisfied plain-

tiffs' burden here. This is so particularly where defendant presented no rebuttal evidence that Watson was indeed licensed, or that Story Dodge had some reason to believe he was. Plaintiffs presented evidence that it would be impossible to negate the possibility that a fugitive, using numerous aliases and birth dates, did not possess a driver's license. Plaintiffs should not be held to the onerous burden of proving Watson had no license in any of the fifty states, nor in any foreign country, which is what the majority opinion seems to require. Where a driver asserted he had a Texas license, and plaintiffs proved this was false, the jury may reasonably conclude he holds no valid driver's license at all. I would so hold.

## CONCLUSION

I see no reason to overturn the jury's verdict in this case. It was foreseeable that this van would be stolen, and foreseeable that a stolen car would be involved in an accident. I would affirm the trial court's judgment.

## OPINION ON MOTION FOR REHEARING

OSBORN, Chief Justice.

The Appellees have filed a Motion for Rehearing with eight points of error which at-

---

discount his opinion, (that Story Dodge was not responsible for plaintiffs' damages) as it was entitled to do. We are not asked to review the admissibility of this evidence on appeal. Suffice it to say that law professors are experts on law, not on any factual matter that might help the jury in determining the questions before it. Deciding the applicable law to be submitted to the jury is the judge's province.

8. Empirical studies substantiate this intuitive conclusion. One author cites statistics indicating that accident rates for stolen cars are anywhere from forty-seven to two hundred times the normal rate; and the percentage of recovered stolen vehicles that have been wrecked range from 15 percent to 46 percent. *See* 13 Am.Jur.3d, *Proof of Facts* 405, 435 (1991); Peck, An Exercise Based Upon Empirical Data: Liability for Harm Caused by Stolen Automobiles, 1969 Wis.L.Rev. 909.

Courts examining this aspect of foreseeability have arrived at similar conclusions. *Enders v. Apcoa*, 127 Cal.Rptr. at 756 ("The negligent driving during such a course of attempted escape would be expected and therefore patently foreseeable. Where it is foreseeable that the manner

of driving will be negligent, the likelihood of injury to the arresting officer and/or to innocent third parties is also foreseeable."); *Zinck v. Whelan*, 120 N.J.Super. 432, 294 A.2d 727 (1972) (the purpose of regulations prohibiting leaving keys in unattended vehicles is at least in part to reduce the hazard of accidents caused by the takers of the vehicle); *Ross v. Hartman*, 139 F.2d 14, 15 (D.C.Cir.1943) ("The evident purpose of requiring motor vehicles to be locked is not to prevent theft for the sake of owners or the police, but to promote the safety of the public in the streets."); *Justus v. Wood*, 348 S.W.2d at 338 ("It is common knowledge that a person possessed of the characteristics which would cause him to thus steal an automobile is a person who is irresponsible and totally devoid of regard for the rights and safety of others ..."); *Hill v. Yaskin*, 380 A.2d at 1110 (citing statistics that between 24 and 57 percent of car thefts are accomplished with the ignition key; the accident rate for stolen cars is forty-seven times greater than the rate for general public); *Gaither v. Myers*, 404 F.2d 216 (D.C.Cir.1968) (citing similar statistics); *Itami v. Burch*, 650 P.2d at 1093 (acknowledging high rate of accidents with stolen vehicles because thieves lack concern for property involved).

táck each of the holdings of the Court in its original opinion 863 S.W.2d at 494. That Motion raises a procedural issue that the Court must address. The issue was not raised in their Reply Brief filed prior to the Court's opinion in this case, but now for the first time in the Motion for Rehearing, it is argued that the "no evidence" points have not been properly preserved. The Motion does not urge, although it should, that the judgment of the trial court cannot be rendered if the issue has not been properly raised.

### Procedural Error

■ The courts of this state have long recognized four procedures for raising a "no evidence" issue which, if sustained on appeal, can serve as the basis for a reversal and rendition of an adverse trial court judgment. Those procedural steps are (1) a motion for instructed verdict, (2) an objection to the submission of a vital fact issue, (3) a Rule 301 motion to disregard the jury's answer to a question, or (4) a Rule 301 motion for judgment notwithstanding the verdict. R. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX.L.REV. 361 (1960); M. Osborn, *Avoiding the pitfalls of appellate practice*, 10 TEXAS TRIAL LAWYERS FORUM 50 (1975); *Hardy v. C.P.I. Sales, Inc.*, 511 S.W.2d 89 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ).

At the time of the decision in *Wagner v. Foster*, 161 Tex. 333, 341 S.W.2d 887 (1960), a complaint about the overruling of the first two complaints could only be preserved if noted in a motion for new trial. That is no longer required under Rule 324, Texas Rules of Civil Procedure.

■ In this case, the Appellees made a motion for an instructed verdict at the close of the plaintiffs' case. The motion was overruled and the defendant-appellant presented evidence and did not renew the motion at the close of all the evidence. This results in a waiver of the motion for instructed verdict. *Horizon Properties Corp. v. Martinez*, 513 S.W.2d 264 (Tex.Civ.App.—El Paso 1974, writ ref'd n.r.e.). That motion being the only basis for a rendition point of error, judgment should not be rendered for the Appellant on appeal.

■ We do note that a "no evidence" point can be raised without any procedural steps prior to the appeal, but if sustained, the case can only be remanded. In *Aero Energy, Inc. v. Circle C Drilling Co.*,[1] 699 S.W.2d 821 (Tex.1985), Justice Kilgarlin said that a no evidence point must be preserved through one of the above four steps or by filing a motion for new trial. That holding was repeated in *Steves Sash & Door Co., Inc. v. Ceco Corp.*, 751 S.W.2d 473 (Tex.1988). That is clearly not required today under the language in Rule 324. See *First American Title Co. of El Paso v. Prata*, 783 S.W.2d 697, 702 n. 1 (Tex.App.—El Paso 1989, writ denied). Today Rule 324 requires a motion for new trial to raise a factual insufficiency point of error. To include a similar requirement for a legal insufficiency point of error would require an amendment to the rule. We conclude that *Aero Energy, Inc.* and *Steves Sash & Door Co.* are no longer authority for the propositions stated in those opinions.

### Waiver of Error

■ This procedural issue is complicated by the fact that the Appellees never in the Appellees' Brief pointed out this procedural defect in the issues raised by the Appellant. This Court faced a similar situation in *Thomas v. Morrison*, 537 S.W.2d 274 (Tex.Civ.App.—El Paso 1976, writ ref'd n.r.e.) where on motion for rehearing, we concluded that an Appellee who filed a brief and raised no question about the assignment of error to support a point of error waived the complaint because of failure to timely raise the issue. We concluded that one who seeks to do battle on the merits of any issue and loses, may not for the first time in a motion for rehear-

1. It should be noted that the Court's opinion cites as authority *City of Austin v. Daniels*, 160 Tex. 628, 335 S.W.2d 753 (1960) which was decided under the same rule applied in *Wagner v. Foster*, 161 Tex. 333, 341 S.W.2d 887 (1960). Rule 324 was amended effective January 1, 1978 to eliminate the requirement for a motion for new trial in jury cases, with exceptions where new evidence is required, the complaint is as to factual insufficiency of the evidence to support a jury finding, a complaint as to damages or jury argument which has not been ruled upon.

ing claim there should have been no battle in the first place. The Texas Supreme Court reached that same result nine years later in *Morrison v. Chan,* 699 S.W.2d 205 (Tex.1985) where Justice Gonzalez wrote, "The court of appeals did not err in refusing to reverse the case on a point raised for the first time in Morrison's motion for rehearing." *Id.* at 206–207. Other courts have reached the same result. *Sherrod v. Moore,* 819 S.W.2d 201, 205 (Tex.App.—Amarillo 1991, no writ) (on motion for rehearing); *Langston v. Eagle Publishing Co.,* 719 S.W.2d 612, 625 (Tex. App.—Waco 1986, writ ref'd n.r.e.) (on motion for rehearing); *Washington v. Walker County,* 708 S.W.2d 493, 497 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) (on motion for rehearing).

We conclude that the Appellant did not properly preserve the "no evidence" issues so as to obtain a rendition, as opposed to a remand, but the Appellees waived their right to complain and the Court will not, after spending days and weeks on these issues, now again review them based upon a complaint raised for the first time in a motion for rehearing.

### Review of Negligent Entrustment on Great Weight Test

We next consider the argument that this Court has erred in assessing the great weight and preponderance point concerning the issue of negligent entrustment. It is argued that where the evidence is conflicting, the jury's verdict is generally regarded as conclusive. In passing on such an issue, a court of appeals is required to weigh all of the evidence and to remand the cause for a new trial if it concludes that the verdict was so against the great weight and preponderance of the evidence as to be manifestly unjust. *Traylor v. Goulding,* 497 S.W.2d 944 (Tex.1973); *Montes v. Texas Employers' Insurance Ass'n,* 779 S.W.2d 485 (Tex.App.—El Paso 1989, writ denied).

This is not a case where the Appellees, as plaintiffs in the trial court, put on evidence all of which supported the jury finding, and the Appellant, as defendant in the trial court, put on evidence to the contrary. Instead, this is a case where the evidence came from Appellees' own witnesses who testified that the vehicle had not been loaned out to some person to drive. One of Appellees' witnesses, Argelia Jaurequi, testified that she had hooked battery cables up to the van shortly before it was taken. Another of the Appellees' witnesses, Jeff Fargason, said he saw the van on the lot on July 24. William Boggs, Jr. said he saw the van that morning. Steve Brown said the battery was dead that afternoon. Silverio Zubia, Jr. said he saw the van an hour before it was reported stolen on the evening of the 24th. All of this testimony came from witnesses called by the Appellees. None of their testimony was impeached and there was no attack on their credibility. Having chosen to vouch for the credibility of at least five witnesses who saw the van on the lot on the 24th shortly before it was reported stolen, the Appellees are not in a position to argue that the finding that the vehicle was entrusted by the owner is not against the great weight and preponderance of the evidence. It was their own evidence which makes the finding against the great weight. Although the Appellees may have been in a position to call all of these witnesses who had worked at one time for Story Dodge as adverse witnesses, they chose not to do so and put each of these witness on the stand, as all of their other witnesses, and to vouch for their testimony before the jury. This made them their witnesses. *Industrial Fabricating Co. v. Christopher,* 220 S.W.2d 281 (Tex.Civ.App.—Galveston 1949, writ ref'd n.r.e.).

We have considered all the points of error in the Motion for Rehearing and they are all overruled.

LARSEN, Justice, dissenting.

For the reasons outlined in my dissent, I would grant Appellee's motion for rehearing. I also wish to voice my disagreement with the majority's characterization of the former Story employees called as fact witnesses by Appellees. Specifically, I do not believe that by calling these persons, plaintiffs "vouch[ed] for their testimony before the jury, [and] made them their witnesses."

TEX.R.CIV.P. 182, the adverse witness rule, was repealed in 1988. Its purpose is now served by TEX.R.CIV.EVID. 607, which provides that "[t]he credibility of a witness may be attacked by any party, *including the party calling him.*" [Emphasis added]. Under the modern rules of evidence Appellees were free to argue for or against evidence evinced from any source. That they called any particular witness during presentation of their case did not mean they "vouched" for that person's testimony or "made [that person] their witness."

> A party does not hold out his witness as worthy of belief, since he rarely has a free choice in selecting them (sic). Denial of the right [to impeach one's own witness] leaves the party at the mercy of the witness and the adversary. *Loyd Electric Co. Inc. v. Millett,* 767 S.W.2d 476, 479 (Tex. App.—San Antonio 1989, no writ), quoting comment to FED.R.EVID. 607.

I dissent from the denial of rehearing.