**LYONDELL PETROCHEMICAL COMPANY and Atlantic Richfield Company, Appellants,**

v.

**FLUOR DANIEL, INC., Appellee.**

No. 01–93–00151–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 17, 1994.

Rehearing Overruled Nov. 17, 1994.

Randal Mathis, Mark M. Donheiser, Kevin J. Maguire, Dallas, for appellants.

James L. Gascoyne, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and MIRABAL and HUTSON–DUNN, JJ.

## OPINION ON MOTION FOR REHEARING

HUTSON–DUNN, Justice.

Lyondell Petrochemical Company and Atlantic Richfield Company (collectively, Lyondell) filed a third-party action seeking contractual contribution from Fluor Daniel, Inc. (Fluor Daniel), for Fluor Daniel's negligence, in connection with an underlying personal injury suit against Lyondell by a Fluor Daniel employee, Randall Trahan. The contribution case was tried to a jury, which, on the single question submitted to it, found that negligence, if any, on Fluor Daniel's part was "0%" the proximate cause of Trahan's accident.

Lyondell appeals, and raises three points of error, contending that the trial court committed reversible error (1) in excluding certain testimony of its expert witness, and (2) in its charge to the jury; and also contending that (3) the jury's finding was manifestly unjust and against the great weight and preponderance of the evidence. We reverse and remand. We deny appellee's motion for rehearing, withdraw our previous opinion, and substitute the following opinion.

On January 16, 1989, Randall Trahan was injured while working as an employee of Fluor Daniel, at Lyondell's petrochemical facility in Channelview, Texas. Fluor Daniel was adding onto a pipe rack at the plant, among other work. Trahan had been on the job for approximately one week. He was at ground level, standing fire watch for a welder, Stanton, working above him; Trahan's task was to ensure that no fires were started by any welding sparks that escaped from the "fire box" welding enclosure. Trahan left that post when his foreman told him to come up the structure and "start connecting iron." Once aloft, to get to where he needed to go, instead of choosing an alternative, safer route, Trahan attempted to walk across a high iron beam, where there was no cable to

hook onto with his safety belt and lanyard.[1] He did not use the technique appropriate to such a situation and, while crossing the beam, he fell some 43 feet to the surface below.

Trahan and his family later brought a personal injury suit against Lyondell. Whether Trahan had a cause of action against Lyondell is not before us here; Lyondell settled the suit, paying approximately $3.7 million. Later still, in the contribution action, Fluor Daniel stipulated that the settlement amount was reasonable. The focus of the contribution trial was whether Fluor Daniel had been negligent in failing to train Trahan adequately in the safety precautions to be taken on the job. The single question submitted to the jury embodied two different theories on which Lyondell sought to recover, as well as the issue of whether Lyondell's own negligence had contributed to Trahan's accident.[2] Lyondell's first theory was that Fluor Daniel failed to use ordinary care in training Trahan. Lyondell's other theory was that Fluor Daniel's training program was deficient under 29 C.F.R. § 1926.21(b)(2) (1992), promulgated by the Occupational Safety and Health Administration (OSHA), and was therefore negligence per se.

Fluor Daniel conceded at trial of the contribution suit that section 1926.21(b)(2) was applicable to Trahan's employment with Fluor Daniel. The regulation provides, "The employer shall instruct each employee in the recognition and avoidance of unsafe conditions and the regulations applicable to his work environment to control or eliminate any hazards or other exposure to illness or injury."

In its first point of error, Lyondell asserts that the trial court committed reversible error in excluding certain testimony of its expert, Donald Waddell, to the effect that Fluor Daniel's training program violated section 1926.21(b)(2). The trial court *admitted* contrary testimony on the same subject; Fluor Daniel's former employee Bozell was allowed to testify that Fluor Daniel's training program did *not* violate section 1926.21(b)(2).

■■■ The decision to admit or exclude evidence is committed to the discretion of the trial court, and is reviewed for abuse of that discretion. *Syndex Corp. v. Dean,* 820 S.W.2d 869, 873 (Tex.App.—Austin 1991, writ denied); *Bolstad v. Egleson,* 326 S.W.2d 506, 519 (Tex.Civ.App.—Houston [1st Dist.] 1959, writ ref'd n.r.e.). To obtain reversal of a judgment based on error in the admission or exclusion of evidence, an appellant must show that the trial court's ruling was in error and that the error was calculated to cause, and probably did cause, rendition of an improper judgment. *Harrison v. Texas Em-*

---

1. The lanyard is a line six feet long that hooks onto a worker's safety belt, and is used to tie onto the structure.

2. The question, in its entirety, was:

> To what extent, if any, did the negligence, if any, of Fluor Daniel, Inc. proximately cause the occurrence in question?
>
> "Negligence" means failure to use ordinary care, that is, failing to do that which a person or entity of ordinary prudence would have done under the same or similar circumstances, or doing that which a person or entity of ordinary prudence would not have done under the same or similar circumstances.
>
> The law provides that safety nets shall be provided when work places are more than 25 feet above the ground or water surface, or other surfaces where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts is impractical. The law also provides that an employer shall instruct each employee in the recognition and avoidance of unsafe conditions and the regulations

> applicable to his work environment to control or eliminate any hazards or other exposure to illness or injury. Failure to comply with such laws is negligence in itself.
>
> An owner of land has a duty to use ordinary care to keep the premises under his control in a safe condition. Failure to do so is negligence in itself.
>
> "Ordinary care" means that degree of care that would be used by a person or entity of ordinary prudence under the same or similar circumstances.
>
> "Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person or entity using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.
> Answer by stating a percentage.
> Answer: ___-0-___ %

*ployers Ins. Ass'n,* 747 S.W.2d 494, 498 (Tex. App.—Beaumont 1988, writ denied); *Texaco, Inc. v. Pennzoil Co.,* 729 S.W.2d 768, 837 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dism'd,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988); TEX. R.APP.P. 81(b)(1).

At the contribution trial, Lyondell called all the witnesses. Five other witnesses testified before Waddell. The testimony of three of those witnesses—the ones who testified concerning whether Fluor Daniel's training program was deficient—is germane here as background to an evaluation of the error Lyondell assigns concerning Waddell's testimony.

W.H. "Taxi" Hundley, Fluor Daniel's construction manager on the Channelview project, testified that when Trahan was hired by Fluor Daniel, he went through a classroom orientation program, approximately two and a half hours long. As part of that program, Trahan was shown a videotape, which included a section on fall protection measures. He also received a copy of the company's employee handbook, approximately 50 pages long, which included safety guidelines about fall protection. Hundley further testified that every Monday, each Fluor Daniel foreman had a "gang box safety meeting," at which a topic chosen by the plant safety department was discussed, and that each Tuesday, there was a mass safety meeting involving everyone on the project. He also testified that Trahan went through orientation on January 9, 1989, which was a Monday. The report of the January 10 safety meeting was introduced into evidence; it showed that the use of safety belts for work above ground was discussed, and that Trahan had attended that meeting. Finally, Hundley testified that he did not believe the orientation program was, by itself, an adequate and sufficient training program, but that the orientation, *together with* the gang box meetings and *on-the-job interaction with supervisors and foremen, was* a sufficient training program.

Walter Bozell was Fluor Daniel's former occupational safety and health manager. Bozell's responsibilities had included running the training and orientation program at the Lyondell plant where Trahan was injured.

Bozell testified that Trahan went through the orientation; and that the handbook contained sufficient information to have prevented Trahan's accident—as did the videotape, Bozell said, when coupled with the accompanying classroom instruction. Bozell also testified that he personally orally discussed the correct use of fall protection equipment with new employees at the orientation. He said that during that oral part of the orientation, he discussed "cooning," a technique for crossing high iron beams when there was no line or other place to tie onto with a safety belt and lanyard. He elaborated,

> If they want to go from point B to point A and there's no other way to get across there or other means to come down and go over and back up and they have to coon the steel, Fluor Daniel and Lyondell both have a policy that no one would walk the steel, no one would climb the steel or slide down the steel.... [About cooning,] I would tell them to sit down on the I-beam, throw your lanyard down under the I-beam, come up, reconnect them to the D-ring on [the back of your safety belt] and then go across the beam like a monkey. You put your feet in the recesses, and then you get up and you slide right across.

Bozell also testified that his deposition had been taken earlier in the case; and that in his deposition, he had talked about the orientation program—including, specifically, the oral portion of it. Finally, in response to questions from Lyondell's counsel, Bozell also opined that the Fluor Daniel training program was one of the better safety programs around, and was sufficient; and that he believed that the program was in compliance with the applicable OSHA regulation concerning training workers. Then, on cross, Fluor Daniel's counsel had the following exchange with Bozell:

> Q: There has been a discussion at the very least in this case about whether or not adequate fall protection pursuant to OSHA was being utilized by Fluor Daniel. You are familiar with the OSHA regulations that govern fall protection, are you not?

A: Yes, sir.

Q: Was Fluor Daniel in violation of any OSHA regulation to your knowledge?

A: No, sir, they were not, because the standard says, like, wherever safety belts, harnesses or fall—regular fall protection is not feasible, then safety nets shall be provided.

Q: Was regular fall protection, in this case, safety belts and lanyards, properly worn, properly hooked up, was that adequate for this job that was being done?

A: Yes, sir.

Roy Stanton, the welder with whom Trahan was working at the time of the accident, testified that Trahan did not appear to be a skilled ironworker or skilled at walking the iron. He was asked, "What training did Mr. Trahan get to walk the iron on this job," and responded, "None whatsoever. No one did." Stanton testified to the training he had gotten on other construction jobs for walking the iron, saying, "Most jobs, the ones that are a long period of time require a two- or three-year apprenticeship program of blueprint reading, hands-on in similar actual things you would be doing, you know, nothing." He was then asked, "Did Trahan receive any type of training like that on this job," and responded, "No, sir. Fluor Daniel did not offer any kind of training at this time." On cross-examination, however, Stanton testified that when he was hired in November 1988, he had been through an orientation program that included a videotape presentation and a rule book of other safety rules, including material about safety belts. Stanton said that he had also been told, in the oral part of the orientation, to use safety belts anytime he left the ground, and told how to use the associated lanyard. Further, in cross-examining Stanton, counsel elicited his agreement that a distinction exists between training in the tasks of an ironworker and training in working safely on the job. On cross, Stanton also contradicted his earlier testimony that there was no training program at Fluor Daniel concerning the tasks of one's craft, saying that the company had an apprenticeship program at the time of trial, but that he did not know whether it was first

implemented after Stanton worked there, or whether its existence just was not made known to him and other employees at that time.

Finally, Stanton also testified that Trahan had been up at Stanton's welding station shortly before his fall. At that time, Stanton said, Trahan had tied himself off onto the scaffolding at that location, in compliance with the rules and the training that he had received.

When his turn came, Waddell first testified to his qualifications as an expert on industrial safety and industry standards for training construction workers and ironworkers, which included former employment with OSHA as a compliance officer, investigator, and instructor. *He then testified that he had reviewed the videotape presentation and safety manual that Fluor Daniel had used to train Trahan,* and that it was his opinion that their training was inadequate and "below the industry standard." The record shows that shortly after that, a bench conference was held; Lyondell sought to ask Waddell whether the deficiencies in the Fluor Daniel training program to which he had testified constituted an OSHA violation:

> [Lyondell's counsel]: Your Honor, I believe they opened the door[.] Mr. Fairless [representing Fluor Daniel] asked their expert witness [Bozell], the person listed on their expert list, whether this constitutes an OSHA violation, they've opened the door. I think I'm entitled now to ask Mr. Waddell.
>
> The court: Who asked who?
>
> [Lyondell's counsel]: Mr. Fairless asked Mr. Bozell.
>
> The court: If it was an OSHA violation?
>
> [Lyondell's counsel]: Yes, sir.
>
> [Fluor Daniel's counsel]: If in his opinion, there was an OSHA violation.
>
> . . . .
>
> The court: Well, why didn't you object? ... I'd certainly sustain it. Just because you didn't choose to object I'm not going to let myself and the jury listen to a bunch of experts' opinions about the law. If you explain to me any OSHA standard that is not clear, that needs

custom and industry to understand the standard, I'll be happy to consider it. But, every OSHA standard I've seen so far, doesn't need expert testimony to explain it to the jury. So, objection sustained, unless there's a new OSHA violation you're talking about.

The objection the trial court sustained apparently took place during the bench conference; it does not appear in the statement of facts.

On cross-examination by Fluor Daniel, Waddell first testified that the opinion of the training program he had expressed on direct was based on his understanding the Fluor Daniel's training program consisted of the video and the manual and nothing else; he repeated that testimony twice more, in response to subsequent questioning. Fluor Daniel's counsel also established, however, in that subsequent questioning, that Waddell had read both Bozell's and Hundley's depositions, and that, from doing so, Waddell had learned about the gang box meetings and mass meetings. Counsel also elicited agreement from Waddell that both types of meeting were forms of safety training, and that they could be "a very effective method of training." On redirect, Waddell was asked, "Even if . . . they had these safety meetings, is that sufficient to train a rigger to be an ironworker?" and responded that it was *not* sufficient. On recross, counsel for Fluor Daniel elicited Waddell's agreement that the accident did not arise out of Trahan's performing his tasks as an ironworker, but rather out of his walking across a high beam without taking appropriate precautions.

Lyondell then made a short bill of exceptions embodying the following further testimony it sought to present from Waddell:

> Q: Mr. Waddell, *do you have an opinion based on what you've reviewed* as to whether any OSHA violations were on this project?
>
> A: Yes.
>
> Q: Okay. And what is that opinion?
>
> A: Well, the requirement to train on the part of the employer training employees.
>
> Q: What specific OSHA regulation was violated in your opinion?
>
> A: 1926.21.
>
> Q: Okay. And what's the basis of your opinion that this section was violated?
>
> A: What?
>
> Q: On what do you base your opinion that this section was violated?
>
> A: Past experience.
>
> Q: Okay. Is that based on your experience as an OSHA compliance officer?
>
> A: Yes.
>
> Q: And your investigations that you conducted as an OSHA compliance officer?
>
> A: Right.
>
> Q: Your Honor, that concludes our bill, we offer each of those questions again before the jury.
>
> The court: Okay, objection will be sustained.

(Emphasis added.)

Next, Virgil Richmond testified. At the time Trahan was injured at Lyondell's Channelview facility, Richmond worked there as Lyondell's manager of the health, safety, and environmental department. *Responding to questions from Fluor Daniel's counsel,* Richmond testified:

> Q: Did you ever see Lyondell employees, in the years that you were out there, ever use a safety net?
>
> A: No.
>
> Q: Did you make *any findings whatsoever* in your investigation report that would—well, *any findings at all that there were OSHA violations, on the part of Fluor Daniel?*
>
> A: We did not cite any OSHA violations in our investigation.

(Emphasis added.)

Immediately after Richmond finished testifying, Lyondell's counsel and the trial court had the following exchange:

> [Lyondell's counsel]: Your Honor, in view of those questions concerning OSHA, we at this time, re-offer the bill of exceptions we made with Mr. Waddell. Each of those questions and answers individually to be read before the jury.

The court: Yeah, the fact is, there is no opening the door. If the court has excluded something as irrelevant and cumulative, that applies to whoever reads it. The fact that you don't object when they ask things, that I would have sustained, objections to about half of what [Fluor Daniel's counsel] covered, is neither here nor there.... [H]e may not open the door for what I think is cumulative and irrelevant by asking it and you not objecting, so your objection is overruled.

[Lyondell's counsel]: I just want to be—want to be clear on the record that I have offered it several times.

The court: And it is—it is excluded again and again and again.

[Lyondell's counsel]: Okay.

The court: There is no such thing on something that's irrelevant.

[Lyondell's counsel]: Well, for the record, I respectfully disagree.

The court: I understand.

■ An expert witness may not testify to his opinion on a pure question of law. *Schauer v. Memorial Care Syss.*, 856 S.W.2d 437, 451 (Tex.App.—Houston [1st Dist.] 1993, no writ). An expert may, however, state an opinion on a mixed question of law and fact as long as the opinion is confined to the relevant issues and is based on proper legal concepts. *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 365 (Tex.1987). For such an opinion to be admissible, the expert must articulate the underlying factual basis of his conclusion. *Puente v. A.S.I. Signs*, 821 S.W.2d 400, 402 (Tex.App.—Corpus Christi 1991, writ denied); *Dieter v. Baker Serv. Tools*, 776 S.W.2d 781, 784 (Tex.App.—Corpus Christi 1989, writ denied). Too, for the opinion to be admitted, the expert must be provided the proper legal concepts with which to analyze those facts. *Keene Corp. v. Rogers*, 863 S.W.2d 168, 176 (Tex.App.—Texarkana 1993, no writ); *see also Harvey v. Culpepper*, 801 S.W.2d 596, 601 (Tex.App.—Corpus Christi 1990, no writ) (no error to exclude physician's opinion about whether appellant was negligent where he was not asked to assume a legally correct definition of negligence before he was asked

the ultimate question). Finally, expert testimony on a mixed question of law and fact must also meet the requirements applicable to expert testimony generally, or to testimony generally—and in particular,· must be helpful to the trier of fact, as required by rule 702 of the Texas Rules of Civil Evidence. *Louder v. De Leon*, 754 S.W.2d 148, 149 (Tex.1988).

■ Here, Waddell testified to the factual basis for his conclusion; his attention was directed to the proper legal standard, section 1926.21(b)(2); that standard contained no legal terms in need of definition or further explanation; and he evaluated the facts in light of that standard. The words used in the regulation were everyday words, familiar to the jurors from ordinary use, and their abstract meaning was easy to understand. It does not follow, however, that Waddell's testimony was excludible as unhelpful to the trier of fact.

Although the wording was straightforward, and may, as the trial court put it, have needed no expert testimony to "explain" it to the jury, the *application* of that regulation to a set of facts, to determine whether Lyondell had *complied with* the regulation, was not straightforward. That determination demanded more of the jury than merely making a check-off comparison between its own fact findings and some specific, objective regulatory standards—such as a requisite number of hours of instruction, for instance.

The dissent recites the evidence the jury had before it concerning Lyondell's conduct, and accepts the trial judge's assessment that the language of the regulation was clear and in need of no explanation. The dissent then concludes that, with only that evidence and that regulatory language, the jury was fully equipped to form an opinion about whether that conduct complied with the regulation. In our view, that conclusion rests on a logical fallacy. It can only be reached by leaping past the absence of any concrete standards in the express terms of this regulation by which to assess Lyondell's compliance with that regulation. The trial court's exclusion of Waddell's opinion forced the jury to make that same leap, if it were to find that Lyon-

dell had violated the regulation; and the jury—understandably, in light of Bozell's expert opinion testimony that Fluor Daniel's training program did *not* violate section 1926.21(b)(2)—refused to do so. Likewise, we decline to take that leap.

Clear regulatory language, cast in ordinary and familiar words, is not enough. Without express standards in a regulation for guidance, a jury lacks a critical stepping stone toward forming an opinion regarding whether the abstract mandate of the regulation has as a factual matter been met, and is not equally as able to form such an opinion as a person familiar, through prior experience, with what, factually, constitutes compliance with the regulation. In such an instance, the specialized experience and knowledge of others, via their testimony as expert witnesses, is called for, to assist the jury to measure compliance with the regulation—and, when offered in such an instance, such testimony should be admitted. Accordingly, Waddell's opinion was an admissible opinion on a mixed question of law and fact, not an inadmissible opinion on a pure question of law.

The second argument in the dissent presupposes that expert testimony on whether Lyondell complied with section 1926.21(b)(2) was properly excludible generally—i.e., it presupposes that Fluor Daniel's objection that that topic was not a proper subject of expert testimony was a "valid objection." Because of our holding that Waddell's opinion was an admissible opinion on a mixed question of law and fact, we have no occasion to address the question raised in that argument. We do not, by our silence on that point, endorse the viewpoint expressed in the dissent. If the question raised in that argument was an open one before, then it remains no less so after our disposition of this case.

In the end, the trial court also stated that it excluded the additional testimony from Waddell also because it believed that that evidence was cumulative and irrelevant. The trial court's ruling cannot be sustained on either of those bases.

■ Waddell's testimony set forth above was plainly *relevant* to Lyondell's negligence per se theory, under TEX.R.CIV.EVID. 401. That testimony was probative concerning an ultimate issue the jury would be called upon to decide; such an ultimate issue is, manifestly, a "fact that is of consequence to the determination of the action[,]" in the language of the rule.

■ Nor was Waddell's testimony set forth above cumulative of Waddell's earlier testimony, on direct, that Fluor Daniel's training was inadequate and "below the industry standard," for at least two reasons. First, that earlier testimony was directed only to Lyondell's *other* negligence theory, failure to use ordinary care, and not to its negligence per se theory; Lyondell was entitled to present evidence to support *both* theories. In addition, Waddell's earlier testimony on direct was—as he said three times, during cross—based on *just* the video and the handbook. However, the further testimony that was excluded came *after* Waddell had testified—also during cross—that he had read Hundley's and Bozell's depositions; and it embodied Waddell's opinion based on the full scope of "what [he had] reviewed" as it had been described to the jury *at that point.* That further testimony was not cumulative of Waddell's earlier testimony on direct because, had that further testimony been presented to the jury, the jury could have concluded either that Waddell's opinion that the training program violated section 1926.21(b)(2) was based on information about the content of that program as complete as that which underlay Hundley's and Bozell's shared contrary opinion, or that Waddell's opinion was, like their shared contrary opinion, based on an evaluation of the video and the handbook, *together with* the gang box meetings, mass meetings, and the oral portion of the orientation.

Similarly, Waddell's further testimony was not cumulative of Waddell's earlier testimony on redirect—both because the redirect testimony did not address Lyondell's negligence per se theory, and because it did not clearly address *safety* training in how to work safely, rather than *craft* training in how to do a workmanlike job.

■ Finally, Waddell's further testimony was not cumulative of Stanton's testimony. Stanton's testimony was internally inconsis-

tent to an extent that distinguished it from Waddell's further testimony; too, Stanton's testimony addressed the industry standard, which was germane to Lyondell's failure of ordinary care theory, but not to its negligence per se theory.

Once Bozell's opinion that Fluor Daniel's training program did *not* violate section 1926.21(b)(2) was before the jury, the trial court's exclusion of Waddell's further testimony left the jury with testimonial evidence that was based on comprehensive information about the training program and that was germane to Fluor Daniel's effort to counter Lyondell's negligence per se theory, but without the contrary evidence, of the same kind, that Lyondell offered. Juries are not bound by any witness's opinion testimony, and may choose to reject such testimony. *See Miller v. Kendall,* 804 S.W.2d 933, 939 (Tex.App.—Houston [1st Dist.] 1990, no writ) (jury is sole judge of credibility of witnesses and weight to be given their testimony and is free to believe or disbelieve that testimony in whole or in part). The probability that a jury will do so, however, is significantly diminished when such testimony is uncontroverted. The trial court's error in excluding Waddell's further testimony was calculated to cause and probably did cause rendition of an improper judgment. TEX.R.APP.P. 81(b)(1).

Point of error one is sustained. In consequence, we do not reach appellant's remaining points of error.

The judgment is reversed, and the cause is remanded for a new trial.

MIRABAL, J., dissents.

MIRABAL, Justice, dissenting.

I dissent.

The majority holds the trial court committed reversible error when it sustained objections to expert witness testimony to the effect that the defendant's training program was in violation of a particular OSHA regulation.

A trial court has broad discretion in deciding whether to admit expert testimony, and its decision will not be disturbed unless there is an abuse of discretion. *Lopez v. City Towing Assoc., Inc.,* 754 S.W.2d 254, 260 (Tex.App.—San Antonio 1988, writ denied); *Herrera v. FMC Corp.,* 672 S.W.2d 5, 7 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Expert opinion testimony should be admitted only when it will assist the trier of fact in understanding the evidence or in determining a fact issue. *Story Serv., Inc. v. Ramirez,* 863 S.W.2d 491, 499 (Tex.App.—El Paso 1993, writ denied); TEX.R.CIV.EVID. 702 (Vernon Pamph.1994). When the jury is equally competent to form an opinion regarding the ultimate fact issues, there is no abuse of discretion in the exclusion of the expert's testimony. *Ramirez,* 863 S.W.2d at 499; *Lopez,* 754 S.W.2d at 260; *Herrera,* 672 S.W.2d at 7.

In the present case, the relevant portion of the jury question is the following:

### Question No. 1

To what extent, if any, did the negligence, if any, of Fluor Daniel, Inc. proximately cause the occurrence in question ?

. . . .

The law ... provides that an employer shall instruct each employee in the recognition and avoidance of unsafe conditions and the regulations applicable to his work environment to control or eliminate any hazards or other exposure to illness or injury. Failure to comply with such laws is negligence in itself.

The jury had before it evidence that defendant Fluor Daniel conducted an orientation program for new employees that included a section on fall protection measures; defendant provided an employee handbook with safety guidelines about fall protection; every Monday "gang box safety meetings" were held; additionally, employees interacted with supervisors and foremen on-the-job. Details about the orientation program and meetings were provided to the jury. The jury also knew the details of how the involved employee got hurt on the job. The jury heard the defendant's expert witness say defendant's training program was one of the better safety programs around; the jury also heard the plaintiff's expert witness say defendant's training was inadequate and below the indus-

try standard. The only evidence the trial court excluded, upon defendant's objection, was the opinion of plaintiff's expert that the defendant's training program *was in violation of a particular OSHA regulation.*[1] The trial judge expressed his reason for excluding the evidence:

> I'm not going to let myself and the jury listen to a bunch of experts' opinions about the law. If you explain to me any OSHA standard that is not clear, that needs custom and industry to understand the standard, I'll be happy to consider it. But, every OSHA standard I've seen so far, doesn't need expert testimony to explain it to the jury.

The trial judge sustained every objection to questions asking whether the defendant's training program was *in violation of the law.*

In my opinion, in light of the jury question the jury was required to answer, the jury was equally as competent as the expert witnesses to form an opinion regarding whether the defendant complied with the law that "provides that an employer shall instruct each employee in the recognition and avoidance of unsafe conditions and the regulations applicable to his work environment to control or eliminate any hazards or other exposure to illness or injury." Accordingly, I find no abuse of discretion by the trial court.

Additionally, I note the plaintiffs argue that, even assuming the expert witness testimony was properly excludable *generally,* once plaintiffs introduced adverse expert testimony, the trial court had to allow plaintiffs to put on rehabilitating evidence, even in the face of a valid objection.

The plaintiffs, on direct examination of an expert witness plaintiffs called, elicited testimony that the defendant's training program did *not* violate a specific OSHA standard; naturally, the defendant did not object to the question, because the answer benefitted the defendant. In the absence of an objection, the trial court had no reason to make a ruling on the admissibility of the expert opinion.

Later, the plaintiffs asked the same question of another expert witness that plaintiffs had called; the defendant objected to the question, and the trial court sustained the objection. Plaintiffs argue that, even assuming the defendant's objection was a good one, the trial court abused its discretion in sustaining the objection. According to plaintiffs' reasoning, once the *plaintiffs presented* evidence to the jury that defendant's training program did *not* violate section 1926.21(b)(2), then *plaintiffs* were entitled to counter that testimony by eliciting other, contrary expert testimony that the training program *did* violate section 1926.21(b)(2).

Although Texas trial courts may have the authority to exclude improper evidence *sua sponte,*[2] the trial court in this case certainly had no duty to do so. The trial court ruled on all objections raised to this type of testimony, and the trial court was consistent in its rulings on objections regarding this type of testimony. I can find no abuse of discretion on the part of the trial court.

Accordingly, I would overrule point of error one, and I would address the plaintiffs' remaining points of error.

---

1. It is important to note that the jury was never asked if the defendant's training program "violated an OSHA regulation." Rather, the portion of jury question one set out above is exactly what the jury was required to answer in connection with the training program.

2. *Anderson v. McDonald,* 486 S.W.2d 123, 124–25 (Tex.Civ.App.—Austin 1972, no writ); *Schafer v. Stevens,* 352 S.W.2d 471, 482 (Tex.Civ.App.—Dallas 1961, writ dism'd).