# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 20, 2022

Lyle W. Cayce
Clerk

No. 22-40071

---

Jeremy Robison, individually and on behalf of his son, a minor; Diantoinette Jones, individually and on behalf of minor child, PP; Schmiker Traylor, individually and on behalf of minor child, RD; Janice Gobert, individually and on behalf of minor child, CB; Jessica Prejean, individually and on behalf of minor child, IW; et al,

*Plaintiffs—Appellants*,

*versus*

Continental Casualty Company,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:17-CV-508

---

Before Graves, Willett, and Engelhardt, *Circuit Judges*.

James E. Graves, *Circuit Judge*:*

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-40071

Students and staff at Marshall Middle School in Beaumont, TX ("Plaintiffs") sued Continental Casualty Company ("Continental") after being exposed to a carbon monoxide leak from a water boiler. Continental insured the school's water boilers, and Plaintiffs claim Continental negligently performed a state-mandated boiler inspection, thereby causing their injuries. Continental moved for summary judgment, and the district court granted its motion. We AFFIRM.

## I. Facts & Procedural History

### a. The 2016 Incident

On January 28, 2016, students and staff evacuated Marshall Middle School after emergency responders discovered a carbon monoxide leak in the building. Sixty-nine students and staff members were transported to local medical facilities for treatment, and many more sought treatment of their own accord. A fire department hazmat team determined the leak was coming from the boiler room, so the school shut off the boilers. The Texas Department of Licensing and Regulation ("TDLR") dispatched two boiler inspectors to the scene: Deputy Boiler Inspector Richard Charland and Chief Boiler Inspector Robby Troutt. After Charland performed a preliminary investigation, Troutt arrived and took over the investigation.

There are two boilers in the boiler room at Marshall Middle School: one for heating (Boiler 840) and one for hot water supply (Boiler 254). There are also two fans in the room: one for combustion (pushing air into the room) and one for exhaust (pushing air out of the room). As part of his investigation, Troutt tested both boilers. Boiler 254 ran without incident, but after running Boiler 840 for less than a minute, the carbon monoxide detectors alerted. Troutt also noticed that the ventilation fan installed above Boiler 840 was not operating. According to Troutt, the combustion fan was non-operational at

No. 22-40071

the time of the incident, but the exhaust fan was operational. He explained the effect of that in his investigative report:

> With the exhaust fan pulling air out of the boiler room without air supplied by the combustion air fan, the boiler room would be under a negative pressure. With the boiler room under a negative pressure, air from the outside would be pulled in through the flue pipes of both boilers . . . If either of these boilers were running at the time of the accident, the fumes of combustion generated by operating equipment would not have been able to exhaust as there would be fresh air entering the room through the flue pipes instead of the fumes of combustion exiting through these pipes.

Troutt concluded that the carbon monoxide leak resulted from two failures: 1) the non-operational status of the power ventilation fan, and 2) a flame exiting the side of the boiler due to corrosion of the fire box refractory.

This case involves a water boiler safety component called an interlock. The interlock is supposed to stop the boiler from operating if its combustion or exhaust fans stop running. According to Troutt, the interlock for Boiler 840 did not directly connect the fans to the boiler but was instead attached to a light switch on the wall. He said the interlock worked properly on the day of the incident when the light switch was turned on.

### b. Texas Boiler Law and Rules

Water boilers in Texas are regulated by the TDLR. Texas law governing boilers is set forth in Texas Health & Safety Code chapter 755 (the "Texas Boiler Law") and Texas Administrative Code chapter 65 (the "Texas Boiler Rules") (together, the "Texas Boiler Law and Rules"). The Texas Boiler Law and Rules require each boiler in Texas to be registered with TDLR and inspected regularly. Tex. Health & Safety Code § 755.025; 16 Tex. Admin. Code § 65.61. The inspections must be performed by an authorized inspector. In order to become an authorized inspector, one must

have at least five years of prior experience with boilers, pass a test on the Texas Boiler Law and Rules, meet individually with the chief inspector, and be employed by an entity registered with TDLR as an authorized inspection agency. 16 Tex. Admin. Code §§ 65.14, 65.25. Insured boilers "shall be inspected by the inspection agency that issued an insurance policy," while all other boilers shall be inspected by the TDLR. *Id.* § 65.61(b). If the inspector finds the boiler "to be in a safe condition for operation," the TDLR will issue a certificate of operation. Tex. Health & Safety Code § 755.029(a)(1). However, if the inspector finds the boiler is unsafe, the boiler must be taken out of commission for repair or replacement. *Id.* § 755.001(5), (21). The Texas Boiler Rules require all boiler rooms to have an "adequate and uninterrupted air supply to assure proper combustion and ventilation." 16 Tex. Admin. Code § 65.603(a). Boilers and their fans "shall be interlocked so that the burners will not operate unless a supply of combustion, ventilation and dilution air" are present as required by the boiler manufacturer's recommendations. *Id.* § 65.603(b)(2).

### c. The 2015 Inspection

Beaumont Independent School District ("BISD") had a boiler insurance policy with Continental covering the boilers at Marshall Middle School. Pursuant to the policy and Texas Boiler Law and Rules, Continental employed authorized inspectors to inspect BISD's boilers. On November 5, 2015, Continental sent a boiler inspector, Shannon Nester, to conduct a safety inspection of Boiler 840. Nester performed an external inspection of the boiler while the boiler was not in operation. To verify that the boiler had an interlock, he identified an electrical conduit leading from the combustion air fan to the boiler. He reported no violations or adverse conditions and determined that a certificate should be issued.

No. 22-40071

### d. Procedural History

After the incident, Plaintiffs sued Continental for negligence, willful and wanton conduct, gross negligence, and negligent undertaking. They claim Nester's inspection did not comply with the Texas Boiler Law and Rules because he did not perform the inspection while the boiler was running or confirm that the boiler had a functioning interlock. They assert that Continental's failure to exercise reasonable care in performing this inspection caused Plaintiffs' injuries because a functioning interlock would have stopped the boiler from running when the combustion fan stopped working.

On June 29, 2021, Continental moved for summary judgment. In its motion, Continental argued Plaintiffs' claims should be dismissed because: 1) Continental is shielded by sovereign immunity for state-mandated boiler inspections, 2) Continental owed no duty to students and staff at the school with regard to the November 2015 boiler inspection, and 3) there is neither evidence that Continental breached a duty to Plaintiffs nor evidence that the alleged breach caused Plaintiffs' injuries. That same day, Continental filed a motion to exclude the proposed testimony of Plaintiffs' expert Bruce McDaniel on the standard of care for boiler inspections, breach, and causation.

Six months later, Continental's motion to exclude was granted in part. The district court found McDaniel did not have adequate experience to testify about the standard of care for boiler inspectors, partly because he had never performed a state-commissioned inspection in Texas. While the court would allow McDaniel to testify as an expert regarding the design, condition, operation, and maintenance of boilers, it excluded his proposed testimony on "the applicable legal requirements and proper scope of state-mandated boiler inspections in Texas, the standard of care for boiler inspectors in Texas, the

causation of the carbon monoxide discharge at MMS, or how Nester's alleged acts or omissions caused or contributed to the carbon monoxide emission incident." Plaintiffs do not appeal that ruling.

The district court granted Continental's motion for summary judgment the same day it granted the motion to exclude. In its order, it rejected Continental's arguments that it either was shielded by sovereign immunity or did not owe a duty of care to students and staff at the school. But the district court concluded that Plaintiffs failed to produce "any evidence—let alone, sufficient evidence—to show that Continental's conduct caused the carbon monoxide release." Finding that Plaintiffs could not establish proximate cause as a matter of law, it granted Continental's motion.

Plaintiffs now appeal on two grounds: 1) the district court impermissibly resolved evidentiary conflicts in Continental's favor, and 2) the district court applied an improper causation standard. Continental defends the district court's judgment on these two grounds and raises an alternative ground for affirmance: it claims expert testimony is necessary to establish the duty of care, breach, and causation in this case, and Plaintiffs have failed to produce admissible expert testimony to this effect.

## II. Standard of Review

A summary judgment is reviewed de novo, applying the same standard as the district court. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). "We construe all facts and inferences in the light most favorable to the nonmoving party when reviewing . . . [a] summary judgment." *Id.* (citation omitted).

No. 22-40071

## III. Discussion

In its alternative ground, Continental argues that we should affirm the district court's grant of summary judgment because Plaintiffs have failed to produce the expert testimony necessary to establish a duty of care, breach, and causation in this technical context. Continental did not raise this argument before the district court, but it could not have raised it at the time because the district court had not yet excluded McDaniel's proposed testimony. "Generally, we do not consider issues on appeal that were not presented and argued before the lower court." *New Orleans Depot Servs., Inc. v. Dir., Off. of Worker's Comp. Programs*, 718 F.3d 384, 387–88 (5th Cir. 2013). However, "a well-settled discretionary exception to the waiver rule exists where a disputed issue concerns 'a pure question of law.'" *Id.* at 388; *see also Morel v. Sabine Towing & Transp. Co.*, 669 F.2d 345, 346 (5th Cir. 1982) ("There are recognized exceptions to this rule, however . . . which encompass the case before us. The question presented is a matter of law[,] and a remand solely for its consideration is neither in the interest of justice nor judicial economy."). As discussed below, the necessity of expert testimony is a question of law, so we exercise our discretion to address this issue here instead of remanding it to the district court.

Under Texas law, "[e]xpert testimony is necessary when the alleged negligence is of such a nature as not to be within the experience of the layman." *FFE Transp. Services, Inc. v. Fulgham*, 154 S.W.3d 84, 90 (Tex. 2004). The necessity of expert testimony is a question of law. *Id.* at 89. To determine whether expert testimony is necessary, Texas courts "consider[] whether the conduct at issue involves the use of specialized equipment and techniques unfamiliar to the ordinary person." *Id.* at 91. For instance, the plaintiffs in *Fulgham* claimed the trailer involved in a tractor-trailer accident was "defective because the bolts and plates anchoring the upper coupler

assembly to the trailer were missing or weak or both due to rust and inadequate torque." *Id.* at 87. The Texas Supreme Court concluded that "[w]hile the ordinary person may be able to detect whether a visible bolt is loose or rusty, determining when that looseness or rust is sufficient to create a danger requires specialized knowledge." *Id.* at 91. Therefore, expert testimony was necessary to establish negligence. *Id.*

Another case involving the necessity of expert testimony that both Plaintiffs and Continental rely on is *Rodriguez v. CenterPoint Energy Houston Electric, L.L.C.*, No. 14-16-00867-CV, 2018 WL 5261246, *2 (Tex. App.—Houston [14th Dist.] Oct. 23, 2018, no pet.). In that case, the plaintiff homeowner thought her tenant was tampering with the electricity meter and stealing electricity. *Id.* at *2. She notified CenterPoint, her electricity provider, and it sent someone to check on the meter but ultimately did not disconnect the electricity. *Id.* The house caught fire five days later due to an electrical malfunction. *Id.* at *3. The homeowner sued, claiming CenterPoint's failure to disconnect the electricity caused the fire. The court concluded that expert testimony was necessary for plaintiff to establish her case because "[p]roving the standard of care, breach, and causation here required consideration of how a utility functions, some knowledge of electricity, and how the company's equipment operates." *Id.* at *6. While she did not present expert testimony on the duty of care, the court found that she could rely on CenterPoint's expert to establish the standard of care. *Id.* But there was no proposed testimony regarding breach since CenterPoint's expert opined that CenterPoint had complied with the applicable standard of care. *Id.* at *6. Without testimony on breach, plaintiff could not prevail on her negligence claims as a matter of law. *Id.* at *7.

Again, this case revolves around the interlock. Plaintiffs' argument that Nester's inspection of Boiler 840 breached the standard of care is twofold. First, they argue that the Texas Boiler Rules require inspectors to

confirm that a boiler has a functioning interlock instead of simply confirming that it has an interlock. Second, they argue the interlock for Boiler 840 does not comply with the Texas Boiler Rules because it connects the boiler to a light switch instead of directly to its fans. In response, Continental argues that the Texas Boiler Law and Rules do not require a particular design for interlocks and that Nester's inspection complied with the Texas Boiler Law and Rules.

After this recitation of the parties' contentions, it is clear that this case involves both specialized equipment and techniques unfamiliar to the ordinary person. A lay juror would not know about water boilers, their safety components, or the requirements of a Texas water boiler inspection. That this case involves specialized knowledge is further evinced by the licensure requirements for inspectors—five years' experience, passing a test on the Texas Boiler Law and Rules, meeting individually with the Chief Boiler Inspector, and working for an entity approved by the TDLR. 16 Tex. Admin. Code §§ 65.14, 65.25. Because determining whether a water boiler inspection complied with the Texas Boiler Law and Rules involves specialized knowledge, we conclude that Plaintiffs need expert testimony to establish their negligence claims. *Fulgham*, 154 S.W.3d at 91; *Simmons v. Briggs Equip. Tr.*, 221 S.W.3d 109, 114 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding that "rail-car movers, the functioning of their engines and other internal parts, or the frequency and type of inspection and maintenance they require" are not within the experience of laypeople); *Turbines, Inc. v. Dardis*, 1 S.W.3d 726, 738 (Tex. App.—Amarillo 1999, pet. denied) (holding that inspection and repair of aircraft engine are not within the experience of laypeople).

Plaintiffs first respond by arguing they need not present their own expert: "[s]imply because Troutt was designated as an expert by Continental does not mean his testimony cannot establish the standard of care." Like the

plaintiff in *Rodriguez*, they can rely on a defendant's expert to establish the standard of care. 2018 WL 5261246, at *6. However, Plaintiffs' purported reliance on Troutt as an expert directly contradicts their position in their opening brief: "Troutt did not testify as an expert on what a reasonably prudent inspector—the legal standard for proving negligence—should do." Even if Plaintiffs could rely on his testimony to establish the standard of care, Troutt went on to testify that Nester's inspection complied with the Texas Boiler Law and Rules. Thus, Plaintiffs are in the same position as the plaintiff in *Rodriguez*: assuming they can rely on Troutt's testimony to establish the duty of care, they still have no admissible expert testimony regarding breach. *Rodriguez*, 2018 WL 5261246, at *6.

Plaintiffs also argue expert testimony is not necessary because the Texas Boiler Law and Rules establish the standard of care. Here, their claim is akin to negligence per se because they assert that the law and rules can speak for themselves and provide the contours of the duty owed. However, "[i]n a negligence per se case, even if the statutory language appears straightforward, expert testimony may be needed to assist the jury in deciding whether the actor's conduct complied with the statute." *Bevers v. Gaylord Broad. Co., L.P.*, No. 05-01-00895-CV, 2002 WL 1582286, at *4 (Tex. App.—Dallas July 18, 2002, pet. denied) (citing *Lyondell Petrochem. Co. v. Fluor Daniel, Inc.*, 888 S.W.2d 547, 554–55 (Tex. App.—Houston [1st Dist.] 1994, writ denied). In *Bevers*, the plaintiff asserted liability under a negligence per se theory claiming that defendant breached a duty of care by violating a federal aviation regulation. *Id.* But the court determined that "expert testimony was required to guide the fact finder as to what constituted hazardous operation of a helicopter in the circumstances." *Id.* at *5. As the Houston Court of Appeals (1st District) put it in *Lyondell*,

> Although the wording was straightforward, and may, as the
> trial court put it, have needed no expert testimony to "explain"

it to the jury, *the application* of that regulation to a set of facts, to determine whether Lyondell had complied with the regulation, was not straightforward. That determination demanded more of the jury than merely making a check-off comparison between its own fact findings and some specific, objective regulatory standards—such as a requisite number of hours of instruction, for instance.

*Lyondell*, 888 S.W.2d at 554 (emphasis in original). Plaintiffs assert that the Texas Boiler Rules "require[] inspectors to confirm the presence of a working interlock." But Continental presents a competing interpretation of this rule based on TDLR's comments and the text of the rule. We take no view of which interpretation is correct; we only note this disagreement to show there is no "objective regulatory standard" or straightforward application of the Texas Boiler Law and Rules. Expert testimony is necessary to guide the fact finder as to whether Nester's inspection satisfied the requirements of the Texas Boiler Law and Rules under these circumstances. Since they have not produced admissible testimony to this effect, Plaintiffs' case cannot proceed.

## IV. Conclusion

Water boilers and the requirements of state-mandated boiler inspections are not a matter of common knowledge or within the general experience of a layperson, so Plaintiffs were required to present expert testimony to establish the standard of care and breach. Plaintiffs do not have a viable negligence claim because they failed to provide expert testimony regarding breach. Without a viable negligence claim, Plaintiffs also cannot proceed on their claims of gross negligence and willful and wanton conduct. *See, e.g.*, *City of Dallas v. Patrick*, 347 S.W.3d 452, 458 (Tex. App.—Dallas 2011, no pet.) ("Because there is no viable claim for negligence under this theory, there is, likewise, no viable claim for gross negligence under this theory."); *Sanders v. Herold*, 217 S.W.3d 11, 20 (Tex. App.—Houston [1st

No. 22-40071

Dist.] 2006, no pet.) ("one's conduct cannot be grossly negligent without being negligent"); *see also Turner v. Franklin*, 325 S.W.3d 771, 785–86 (Tex. App.—Dallas 2010, pet. denied) (collecting Texas cases equating willful and wanton conduct with gross negligence). Accordingly, the judgment of the district court is AFFIRMED.