

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00359-CR

SYED MANSOOR ALI, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 18th District Court
Johnson County, Texas
Trial Court No. F46294, Honorable John E. Neill, Presiding

January 9, 2015

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant Syed Mansoor Ali appeals his jury trial conviction for evading arrest or detention while using a vehicle[1] and the trial court's assessment of punishment at five years of incarceration, probated for a term of five years, and imposition of a $1000 fine. Through one issue, appellant asserts the trial court erred by excluding expert witness testimony. We will affirm the judgment of the trial court.

---

[1] This offense is a third degree felony. TEX. PENAL CODE ANN. § 38.04(b)(2)(A) (West 2012).

## Background

Because appellant does not challenge the sufficiency of the evidence to support his conviction, we will relate only those facts necessary to disposition of his appellate issue.

Testimony and other evidence at appellant's jury trial showed that in March 2012, appellant, a native of Pakistan, was driving on a highway in Johnson County, Texas. Officer James Robinson of the Venus Police Department observed appellant driving on the road from his position in a parking lot. He verified with his radar that appellant was speeding. The officer activated his lights and siren, pulled out of the parking lot and began following appellant.

Officer Robinson testified appellant looked back through his rearview mirror at him "several times" during his pursuit. Robinson testified appellant's "speed ranged from 60 to 40 miles an hour. It went up and down several times before finally settling at about 40 miles an hour." The speed limit at that point was 60 miles per hour. The officer testified appellant finally pulled over after traveling some 6.1 miles, eventually stopping just over the Ellis County line. When the officer handcuffed appellant, appellant repeatedly stated he did not understand why he was being arrested and was "sorry."

The jury also saw video from the patrol car's camera. It depicts the two vehicles traveling through rural countryside along the four-lane highway, which is divided by a grassy median. It shows other vehicles on the road pulled over to the side as appellant and the patrol car passed by.

Analysis

Through one issue, appellant challenges the exclusion of the testimony of his two expert witnesses. We conclude the trial court did not abuse its discretion by excluding the testimony.

To prove its case under Section 38.04 of the Penal Code, the State was obligated to prove that appellant intentionally fled from a person that he knew was a peace officer who was attempting lawfully to arrest or detain him. TEX. PENAL CODE ANN. § 38.04 (West 2012). To raise this offense from a Class A misdemeanor to a third degree felony as alleged in the indictment, the State also had to prove appellant used a vehicle while in flight. TEX. PENAL CODE ANN. § 38.04 (West 2012). A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. TEX. PENAL CODE ANN. § 6.03(a) (West 2012). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. TEX. PENAL CODE ANN. § 6.03(b) (West 2012).

The State presented the testimony of Officer Robinson and that of a records custodian from the Department of Public Safety who sponsored admission of appellant's driver's license records. That evidence showed appellant had been issued a learner's permit but not a driver's license. As noted, the in-car DVD recording from Robinson's patrol car also was introduced.

3

Appellant's defensive theory was that he lacked the *mens rea* necessary for guilt. Rather, his immigrant status and differences in driving practices between those prevailing in Pakistan and those followed in the United States led to "a jumbled up situation for [him]" as "pulling over in Pakistan is entirely different" than in the United States. Appellant testified he left Pakistan for the United States in 2009. He thus had lived in the United States for four years. He testified he "never" drove in Pakistan but as a passenger had seen police stop cars in that country. He also testified he drove in this country but usually only on residential streets as he "was scared and [a] coward to drive on the highways."

At the outset of his case-in-chief and in support of his defensive theory, appellant proffered the testimony of two expert witnesses, Peter Schulte and Manzoor Chaudhry. When the State raised objection, the trial court removed the jury, heard the proffered testimony and argument of counsel as to both witnesses, and sustained the State's relevancy objections.

On appeal, appellant argues Schulte and Chaudhry were qualified and their testimony was relevant and admissible under Rule of Evidence 702 and related rules. He also refers to Rule of Evidence 403. TEX. R. EVID. 702, 403.

The admission or exclusion of expert testimony is reviewed on appeal for an abuse of discretion. *Brewer v. State*, 370 S.W.3d 471, 472 (Tex. App.—Amarillo 2012, no pet.). Under that standard, a trial court's ruling will not be disturbed so long as it is within the zone of reasonable disagreement. *Apolinar v. State,* 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). Said another way, before reversing the trial court's decision, we

4

must find the court's ruling was so clearly wrong as to lie outside the realm within which reasonable people might disagree. *Taylor v. State,* 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Green v. State,* 191 S.W.3d 888, 895 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

Rule of Evidence 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702.

The Court of Criminal Appeals has summarized the requirements for admission of expert testimony as follows: "Thus, before admitting expert testimony under Rule 702, the trial court must be satisfied that three conditions are met: (1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case." *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006). It has summarized those conditions as addressing: (1) qualification (2) reliability and (3) relevance. *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006).

Expert testimony that meets those conditions is admissible to negate the *mens rea* element of the offense. *Ruffin v. State*, 270 S.W.3d 586, 596 (Tex. Crim. App. 2008); *Jackson v. State*, 160 S.W.3d 568, 574 (Tex. Crim. App. 2005). Such evidence offered to negate the *mens rea* element, however, still is subject to exclusion under other evidentiary rules like rule 403. *Ruffin*, 270 S.W.3d at 595-96. The court may also

exclude such evidence if it is insufficiently relevant or does not truly negate the required *mens rea*. *Id.*

We begin our application of the law to the record before us by noting appellant relies on a proposition with which we cannot agree. Appellant characterizes the State's objection to Schulte's testimony as "improper," and argues the State "must stand by the objection sustained by the court, as opposed to other objections raised or inferred . . . ." However, we must uphold the trial court's exclusion of appellant's proffered evidence if it is reasonably supported by the record and correct on any theory of the law applicable to the case. *Alford v. State*, 400 S.W.3d 924, 928 & n.2 (Tex. Crim. App. 2013).[2] That means the trial court's ruling "will not be disturbed even if the trial judge gave the wrong reason for his right ruling." *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). Under error preservation rules, however, we do not *reverse* a trial court's evidentiary ruling on a theory of admissibility or inadmissibility not raised at trial. *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005); *Martinez v. State,* 91 S.W.3d 331, 336 (Tex. Crim. App. 1992); *see Wead v. State,* 129 S.W.3d 126, 129 (Tex. Crim. App. 2004) (court of appeals erred even to consider theory supporting appellant's position on mistrial because theory was not argued in trial court).

Chaudhry, a native of Pakistan, offered testimony about the habits and customs of drivers and police in Pakistan. Chaudhry told the court he had lived both in Pakistan and in the United States and, while driving, had been stopped by police in both

---

[2] *But see State v. Esparza*, 413 S.W.3d 81, 90 (Tex. Crim. App. 2013) (limiting theories of law "applicable to the case" to those presented at trial and on which the appellant was fairly called upon to adduce evidence). We do not perceive that the limitation expressed in *Esparza* has any application here.

countries. He said that in Pakistan, police do not stop drivers by following them with lights or siren. Rather, he said, drivers in Pakistan stop only when an officer pulls in front and indicates they are to stop.[3] If a Pakistani driver sees a police car behind him with lights on, he testified, the driver would consider that the officer desires him to move over and let the officer pass. "If the officer is behind you and he turn [sic] the lights on, that's when you move out of his way and let him go. You know, he's not going to stay." He said the first time he was stopped by police in the United States, he at first did not realize the officer wanted him to stop, and that he knew "three or four" other Pakistanis who had the same experience when they began driving in this country. Chaudhry also told the court that Pakistani drivers travel in the left lane, opposite of that in the United States, so that the "slow lane" in Pakistan is the left lane.

Chaudhry's testimony offered only his specialized knowledge of driving and police practices in Pakistan. Although he agreed he was "familiar with" appellant's contention he "didn't know he was supposed to pull over," Chaudhry said he did not know appellant, did not know appellant's understanding of American traffic laws and customs, and had met appellant only the day before trial. He expressed no opinions in his testimony. Nonetheless, to allow the jury to hear Chaudhry's testimony, the trial court must have been satisfied it was relevant, that is, it would actually assist the jury to determine whether appellant possessed the culpable mental state necessary for

---

[3] He indicated drivers are required to stop by the officer's display of a flag or sign, or by the lowering of a barrier. He said, "In Pakistan . . . when . . . you break the law, the officer will put their – you know, they have the big . . . barrier, they will pull it down. Or they will put the stop sign in front of you. They [sic] holding up stop sign, a flag, in front of you and then you stop."

7

conviction.[4]  Considering all the evidence the trial court had heard when it excluded the testimony, we find the court could have concluded, without leaving the zone of reasonable disagreement, it would not actually assist the jury in that determination.

The trial court could have viewed parts of Chaudhry's testimony as expressing only his personal driving practices.  With regard to the decision of a Pakistani driver to stop for a police officer, Chaudhry also discussed factors other than mere custom, factors not asserted to be present in this case.  For instance, he said in Pakistan he would not "pull over" for an officer who was behind him because Pakistan is a "third world country," where "it's crazy," and a police officer may "come behind you and shoot you."  He would not stop under those circumstances because "I'm not going to put my life at risk, you know."

He also talked of the necessity in Pakistan to insure that a person attempting to stop a driver is a legitimate police officer.  He said, "I mean, the police officer has to be in front of me and I want to make sure that he's a police officer, you know what I mean.  You know, I need to stop, I need to see the sign and uniform . . . ."

With regard to a driver's decision to move to the road's shoulder to allow a following police officer to pass, Chaudhry also said a Pakistani driver would not drive on the shoulder because "they don't want their car to be damaged."

---

[4] The evading statute contains two culpable mental states.  To commit the offense a person must intentionally flee, and, as pertinent here, his flight must be from one the person knows is a peace officer attempting lawfully to arrest or detain him.  TEX. PENAL CODE ANN. § 38.04(a) (West 2012); *Redwine v. State*, 305 S.W.3d 360, 362 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).  Appellant's argument does not distinguish between the two mental states, nor do we find it necessary to distinguish between them in our disposition of his appellate issue.

The video depicts appellant and Robinson driving on a divided highway, with two eastbound lanes and ample shoulders on both sides. The video shows appellant drove in the right lane for some two-and-a-half minutes, then activated his left turn signal and moved to the left lane. Robinson promptly also moved to the left lane, and the two of them drove in that lane for a similar time before appellant abruptly exited to the right at an off-ramp and stopped. The trial court saw nothing to suggest that pulling over to stop, to the left or to the right, would have risked damage to appellant's vehicle. Robinson testified appellant was "scared" when he removed him from his vehicle, but the court had heard nothing suggesting appellant doubted the car pursuing him was an official police vehicle driven by an actual officer, or suggesting appellant worried that his life would be at risk if he stopped. Chaudhry's testimony thus included discussion of factors the trial court could have seen as having no tendency to make the existence of the culpable mental state more or less likely, and therefore having no relevance to the case. TEX. R. EVID. 401.

The State argued to the trial court that the jury was fully capable of determining whether the evidence showed appellant intentionally fled the officer and knew he was a peace officer attempting lawfully to detain him. The jury's competence to make that determination would not necessarily require exclusion of evidence that would be helpful to the jury. *See Glasscock v. Income Property Servs.*, 888 S.W.2d 176, 180 (Tex. App.—Houston [1st Dist.] 1994, writ dism'd by agr.).[5] However, even if part of

---

[5] "Expert testimony should be admitted only when it will aid the jury in making inferences regarding fact issues more effectively. [citation omitted] When the jury is equally competent to form an opinion regarding ultimate fact issues, the expert's testimony as to these issues may be excluded. [citation omitted] However, 'a court need not exclude expert testimony when the subject matter is within the comprehension of the average juror if the witness has some specialized knowledge to offer on the

9

Chaudhry's proffered testimony had relevance, a holding we do not reach, it was appellant's task before the trial court to limit the offered testimony to that which was admissible.[6] *See Reyna*, 168 S.W.3d at 178-79.[7]

The same applies to Schulte's proffered testimony. Schulte testified he is a licensed Texas attorney and peace officer, an instructor at the Regional Texas Police Academy for the North Texas Regional Council of Governments, and a former Dallas County prosecutor. His proffered testimony included an explanation that peace officers are trained that cultural differences may account for a person's behavior and that an officer conducting a traffic stop should be alert to that possibility.

Even if any part of Schulte's testimony was admissible, a holding we again do not reach, his testimony included assertions the court rather clearly could have considered to be irrelevant to appellant's guilt or innocence. For instance, his proffer included an explanation of lesser offenses the State could have brought against appellant, and his

---

same issue which would be helpful.'" *Glasscock*, 888 S.W.2d at 180 (quoting John F. Sutton, Jr. & Cathleen C. Herasimchuk, *Article VII, Opinions and Expert Testimony*, 30 Hous. L. Rev. 797, 817 (1993) (Texas Rules of Evidence Handbook)); *see* Jeff Brown & Reece Rondon, Texas Rules of Evidence Handbook 690 (2014 ed.). *See generally* Harvey Brown & Melissa Davis, *Eight Gates for Expert Witnesses: Fifteen Years Later,* 52 Hous. L. Rev. 1, 32-33 (2014).

[6] Although the trial judge could have gained some understanding of appellant's defensive theory from voir dire and the proffered testimony of Chaudhry and Schulte, it is unclear to us whether, at the time he excluded their proffered testimony, he had been made aware whether appellant would testify, or even whether the defense had by then made that decision. Neither of those questions is critical to our evaluation of the admissibility of the proffered testimony.

[7] "The trial court need never sort through challenged evidence in order to segregate the admissible from the excludable, nor is the trial court required to admit only the former part or exclude only the latter part. If evidence is offered and challenged which contains some of each, the trial court may safely admit it all or exclude it all, and the losing party, no matter who he is, will be made to suffer on appeal the consequences of his insufficiently specific offer or objection." *Reyna*, 168 S.W.3d at 178 (quoting *Jones v. State*, 843 S.W.2d 487, 492-93 (Tex. Crim. App. 1992) (addressing preservation of error).

opinion the case was "overcharged" under the circumstances. Schulte also expressed the opinion appellant's conduct was not indicative of someone who was fleeing.

Schulte testified he knew nothing of Pakistani driving customs or practices, and did not know appellant. His opinion regarding appellant's lack of intent to flee was derived from his experience and from his review of the patrol car video. Without Chaudhry's testimony regarding Pakistani customs, the trial court could have reasonably found Schulte's testimony regarding the importance of cultural differences likewise lacked relevance because nothing the trial court had yet heard showed appellant's actions were attributable to cultural differences.

We resolve appellant's sole issue against him and affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.